384 A.2d 1221

**COMMONWEALTH of Pennsylvania**

v.

**Joseph A. ROSMON, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted March 6, 1978.

Decided April 28, 1978.

542

John P. Liekar, Public Defender, Washington, for appellant.

Paul Petro, Washington, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

POMEROY, Justice.

On May 20, 1976, the appellant Joseph A. Rosmon, Jr., tendered a plea of guilty to murder of the third degree and, following an extensive colloquy, the plea was accepted by the trial judge. In accordance with a plea bargain between appellant and the District Attorney, a sentence of imprisonment of eight to twenty years was recommended and was imposed by the court. On July 27, 1976, Rosmon petitioned the trial court for permission to withdraw his plea of guilty.[1] The court en banc denied the petition and this appeal followed. We affirm the order of the trial court.

1. As we have recently reiterated, such a petition filed in the trial court is the proper procedure for attacking the validity of a guilty plea. *Commonwealth v. Beatty*, 474 Pa. 104, 376 A.2d 994 (1977); *Commonwealth v. Hunter*, 468 Pa. 7, 359 A.2d 785 (1976); *Commonwealth v. Zakrzewski*, 460 Pa. 528, 333 A.2d 898 (1975); *Commonwealth v. Lee*, 460 Pa. 324, 333 A.2d 749 (1975). When such a petition is filed subsequent to the imposition of sentence, the rule is that relief will be granted only where " 'necessary to correct a manifest injustice'." *Commonwealth v. Starr*, 450 Pa. 485, 490, 301 A.2d 592, 595 (1973). Involuntariness of a plea such as was here alleged would qualify under that formulation.

A petition to withdraw a guilty plea following imposition of sentence is now governed by Pa.R.Crim.P. 321 which requires all such

The record discloses that appellant entered a tavern in Washington County and, accompanied by a young woman, proceeded to a pool table in the rear of the bar. There they encountered Richard and Nancy Coen. The two couples played pool until a heated argument broke out between the two men. Testimony at the coroner's hearing conflicted as to whether or not Coen at any time struck Rosmon, but it is agreed that Coen was unarmed. When the Coens attempted to leave the tavern, Rosmon produced a .22 caliber pistol from his coat pocket and, stationing himself between the Coens and the exit, threatened to shoot Richard Coen. The police were called, and entered the premises as Rosmon was backing toward the door, his gun aimed at Coen. The presence of the police went unheeded, whereupon one of the officers attempted to prevent Rosmon from firing. Rosmon nevertheless pulled the trigger, killing a bystander. Rosmon was heard to exclaim, "I shot the wrong man."

The foregoing facts were established at the guilty plea hearing and were admitted by the appellant. The trial judge then proceeded to explain fully what a guilty plea connoted and the consequences of entering such a plea. See, e.g., *Commonwealth v. Rodgers*, 465 Pa. 379, 350 A.2d 815 (1976); *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974); Pa.R.Crim.P. 319(a). In the course of this explanation, wherein the judge stated that such a plea would serve to abandon any claim of self-defense, the following exchange occurred:

> "[THE COURT:] . . . Now, you have also referred to the fact that you thought, or that you didn't know what Coen had in mind at the time of your confrontation with

petitions to be filed within 10 days of sentencing. The present petition was not filed until one month following sentencing, but we do not consider it barred by Rule 321 which did not become effective until September 21, 1977. Prior to the new rule of criminal procedure, the timeliness of efforts to withdraw guilty pleas was governed by a due diligence approach. *Commonwealth v. Bunch*, 466 Pa. 22, 351 A.2d 284 (1976); A.B.A. Standards, Pleas of Guilty § 2.1 (1968). There is no assertion by the Commonwealth nor any basis in the record to conclude that this appellant failed to exercise due diligence in filing the petition.

him. Now, under the law of Pennsylvania, if a defendant reasonably believes that the force he used was necessary to protect himself against death or serious bodily injury

. . .

"DEFENDANT: . . I think it was sir.

"THE COURT: Then this would be a defense and if you think you have that defense, then you should go to trial and we would not be permitted to accept your plea of guilty and I'm telling you that because that is the law of Pennsylvania. You have heard Mr. Petro tell us what the Commonwealth is prepared to prove and I'm sure that your attorney, Mr. Liekar, knows what the testimony was at the preliminary hearing and at the Coroner's Inquest and I'm sure he has gone over that with you.

"Now, you do have the defense of self-defense as I have explained that to you and I'll read it to you again, that a person has the defense of justification if he reasonably believes that the force he used was necessary to protect himself against death or serious bodily injury, on the same occasion that the defendant used the force because the Commonwealth has the burden of disproving a defense of justification and the jury could only find you guilty if they were satisfied beyond a reasonable doubt that you did not reasonably believe that the force you used was immediately necessary to protect yourself then and there, against death or serious bodily injury that was or would have been inflicted on you by Mr. Coen.

"Now, if you feel, after discussing that with your attorney, that you have the defense of self-defense, then we should not permit you to plead guilty to third degree murder and we should go to trial in this case."

(Mr. Liekar [defense counsel] confers with his client.)

"MR. LIEKAR: Your Honor, I have discussed that with Mr. Rosmon before we came into Court, when I interviewed him previously, and it was my opinion at the time and I told Mr. Rosmon, that a defense of self-defense would not hold up under the testimony which I had reviewed, coming out of the Coroner's Inquest and I have

so advised Mr. Rosmon and whether he still believes he was threatened by Mr. Coen, that he had to use the gun for his own protection, if he wishes to take that defense, of course I can't deny it. I can't argue against him going to trial, but I have discussed it with him. (Mr. Liekar turns to his client). Now, Mr. Rosmon, we discussed the matter of self-defense, as to whether you were in fear of Coen, that he would attack you or seriously harm you and it is my understanding as the result of our conversation, that we both decided that was not the case and we could not prove that at a trial, is that correct?

"DEFENDANT: Yeah, yeah, so we just stay with what we have. I know I'm in the right. I know what happened. I know I pled guilty to 3rd degree but I know I'm not guilty but I know if I go in front of a jury, I will be found guilty but everything that I have told here and that she wrote down, I'm telling the truth.

"THE COURT: Do you admit that you said after the shooting that you killed the wrong person? Do you remember saying that?

"DEFENDANT: I remember saying that sir but I'm just trying to get out of the bar.

"THE COURT: Do you understand by pleading guilty to third degree murder, you are giving up your right to your defense of self-defense as I described that to you?

"DEFENDANT: I understand that sir.

"THE COURT: You are now willing to enter the plea of guilty to the crime of third degree murder and you do so at this time?

"DEFENDANT: Yes, sir.

"THE COURT: Anything else Mr. Liekar?

"MR. LIEKAR: No, sir. Of course, there will be a presentence investigation before sentencing.

"THE COURT: Yes. Anything else Mr. Petro?

"MR. PETRO: No, Your Honor."

Mr. Rosmon now asserts that the foregoing portion of the guilty plea colloquy demonstrates that his plea was not knowingly and intelligently entered.

Appellant's position is that a guilty plea cannot be said to be knowing and intelligent where at the time it is tendered the defendant maintains his innocence. While this Court has not had occasion to declare this proposition to be the law in Pennsylvania, see *Commonwealth v. Sampson*, 445 Pa. 558, 566, 285 A.2d 480, 485, (1971) (concurring opinion of ROBERTS, J., joined by O'BRIEN, J.), we nevertheless believe it inapplicable to the instant case.

■ The rationale of the rule which appellant urges is the obvious incompatability of a claim of innocence with an admission of guilt; the conflict between the two states of mind, it is said, negates a conclusion that the plea is knowingly and intelligently entered. See *Commonwealth v. Robinson*, 452 Pa. 316, 305 A.2d 354 (1973); *Commonwealth v. Sampson, supra* (concurring opinion). We see no such conflict in the instant case. A reading of the colloquy as a whole shows clearly that appellant felt justified in resorting to deadly force even though his adversary was unarmed, despite a readily available avenue of retreat, and notwithstanding the fact that police had arrived on the scene and were attempting to resolve the situation. Rosmon was, however, correctly advised by his counsel that the law of self-defense would negate the conclusion that his acts were legally justified. Accordingly, we interpret the remarks of Mr. Rosmon as indicating that although he personally believed he acted correctly in response to the situation, he quite understood that he was *legally* wrong. Thus, he was not in fact asserting his innocence of the charges;[2] rather, he was abandoning a would-be defense based on what he thought the law should be because it did not correspond with the law as it is, and which the jury was bound to apply. A similar situation was before us in *Commonwealth v. Robinson*, 452 Pa. 316, 321, 305 A.2d 354, 356–57 (1973). Speaking for the Court in that case, Mr. Justice Nix concluded:

2. Indeed, Rosmon admitted his role in the killing as well as his understanding that he was guilty under the applicable law; he simply disagreed with the state of the law as it existed.

"Unlike the factual situation in *Commonwealth v. Shank*, 446 Pa. 59, 285 A.2d 479 (1971), where the plea of guilty and the exculpatory testimony of the defendant stood side by side without resolution, in the case at bar, after a flat assertion that the killing was in self defense, the trial judge carefully explained the incompatibility of the two positions and the defendant abandoned his claim of self defense and elected to adhere to his plea of guilt. We are satisfied that the colloquy reflects a voluntary, knowing, and intelligent entry of the plea of guilt."

In the instant case, we are satisfied that appellant was fully advised of his right to proceed to trial and the consequences attendant upon a plea of guilty. Rosmon knowingly and intelligently chose to abandon an unlikely defense[3] in order to obtain the favorable terms of the plea bargain. He may not now complain, or seek to adopt what might now appear to have been a preferable strategy.

The order of the trial court denying appellant's petition to withdraw his guilty plea is affirmed.[4]

NIX, J., concurs in the result.

MANDERINO, J., files a dissenting opinion in which ROBERTS, J., joins.

MANDERINO, Justice, dissenting.

I dissent. My reading of the guilty plea colloquy (the relevant portions of which are quoted in the majority opin-

---

**3.** Any assertion that Rosmon was acting in self-defense would have been contradicted by the facts that the alleged aggressor was unarmed, that appellant had an unimpeded avenue of retreat, and that the shooting did not occur until after police had arrived and were in a position to control the other party to the dispute.

**4.** The notice of appeal filed herein purported to be both from the order of the trial court entered November 9, 1976 denying appellant's petition for leave to withdraw his guilty plea, and from the judgment of sentence entered on June 28, 1976. To the extent that the appeal purported to be from the judgment of sentence it was, of course, untimely. Pa.R.A.P. 903(a). In any event, the appeal from the order denying leave to withdraw the guilty plea embraces all issues which could have been raised on direct appeal from the judgment.

ion) (at pp. 1223–1224), convinces me that appellant's plea was not knowingly and intelligently entered.

Initially it is clear that appellant felt that he had acted in self-defense: in response to the Court's reference to Pennsylvania law concerning a defendant's reasonable belief that the force used was necessary to protect himself, appellant responded, ". . . I think it was sir." Secondly, it is clear that appellant pled guilty because he erroneously believed—having been so informed by his attorney—that in order to gain an acquittal, he would have to prove at trial that he had acted in self-defense. Appellant's trial counsel stated that he had advised appellant regarding his claim of self-defense, saying,

> "[W]e discussed the matter of self-defense, as to whether you were in fear of Coen, that he would attack you or seriously harm you and it is my understanding as the result of our conversation, that we both decided that was not the case and *we could not prove that at a trial*, is that correct? (Emphasis added.)

Appellant immediately responded, saying

> "Yeah, yeah, so we just stay with what we have. *I know I'm in the right. I know what happened. I know I pled guilty to 3rd degree but I know I'm not guilty but I know if I go in front of a jury, I will be found guilty* but everything that I have told here and that she wrote down, I'm telling the truth." (Emphasis added.)

For these reasons, I do not believe app llant knowingly and intelligently pled guilty to murder and would therefore reverse the judgment of sentence and remand for a new trial.

ROBERTS, J., joins in this dissenting opinion.