Roy C. REYNOLDS, Appellant,

v.

James MABRY, Commissioner, Arkansas
Department of Correction, Appellee.

No. 77–1675.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1978.

Decided May 2, 1978.

Bart G. Mullis, Pine Bluff, Ark., for appellant.

Robert M. Lyford, Little Rock, Ark., for appellee; Bill Clinton, Atty. Gen., and Jackson Jones, Asst. Atty. Gen., Little Rock, Ark., on the brief.

Before LAY, HEANEY and HENLEY, Circuit Judges.

LAY, Circuit Judge.

On March 7, 1969, an Arkansas state court jury found Roy C. Reynolds guilty of kidnapping and first degree rape of a 13 year old girl. Reynolds was sentenced to 99

years imprisonment. The victim positively identified Reynolds as the person who kidnapped her younger brother and herself, and as the person who had raped her. Reynolds did not appeal from his conviction. In 1975 he unsuccessfully sought post-conviction relief in the state court on the grounds of ineffective assistance of counsel. The denial of his petition was affirmed by the Supreme Court of Arkansas in an unpublished opinion, No. CR–75–178, delivered February 9, 1976. Petitioner thereafter sought a writ of habeas corpus in the federal district court in the Eastern District of Arkansas. After an evidentiary hearing the district court also rejected petitioner's allegations. He now appeals.

Petitioner asserts his counsel failed (a) to adequately investigate the circumstances surrounding his arrest, (b) to move to suppress evidence found in the search of his vehicle, (c) to move to quash an identification made while he was in a lineup, (d) to move to strike an amended information or ask for a continuance based on the fact that the information was amended only two days prior to trial, (e) to move for a mistrial when one juror had to be dismissed because of illness, and (f) to pursue a possible plea bargain. Petitioner also urges that his counsel introduced severely prejudicial information at trial concerning petitioner's sexual abnormalities in an attempt to establish a "new theory" of insanity as a defense. Reynolds also contends that the trial court violated his right to a fair trial in granting a seven day "continuance" midway in the trial[1] due to the illness of one of the government's key witnesses.[2]

We find that the claims raised fail to demonstrate ineffective assistance of counsel. We also hold that the granting of a continuance is within the sound discretion of the trial judge and no abuse of that discretion has been demonstrated.

The accepted standard for effectiveness of trial counsel is now established as that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances. *United States v. Easter,* 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). Furthermore, there is a presumption that counsel is competent, *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976), and the petitioner must shoulder a heavy burden to override this presumption. *Id.; Crismon v. United States,* 510 F.2d 356, 358 (8th Cir. 1975); *McQueen v. Swenson* (McQueen I), 498 F.2d 207, 214 (8th Cir. 1974). Finally, the exercise of reasonable judgment, even when hindsight reveals a mistake in that judgment, does not render a lawyer negligent or lacking in competence in rendering his services.[3]

Utilizing these basic precepts, we find petitioner's contentions must fall. Petitioner's counsel indicated that he did not object to the amended information since he was ready for trial and since such amendments were within the discretion of the

---

1. The trial commenced on February 27, 1969; on February 28, 1969, the trial judge continued the trial until March 7, 1969.

2. In the state court petitioner only challenged the continuance granted by the trial judge, and trial counsel's (1) failure to move to strike the amended information or move for a continuance, (2) failure to object to continuing with only an 11-person jury, and (3) use of the insanity defense. Since all of petitioner's claims concerning ineffectiveness of counsel relate to the totality of performance by his trial counsel, we feel it is in the interest of justice to consolidate all of his contentions; we do not bifurcate his argument by requiring further exhaustion in the state courts. *Cf. Losieau v. Sigler,* 421 F.2d 825, 828 (8th Cir. 1970).

3. As we said in *Robinson v. United States,* 448 F.2d 1255, 1256 (8th Cir. 1971):

   Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel.

   *See also Marzullo v. Maryland,* 561 F.2d 540, 544 (4th Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3415 (U.S. Jan. 3, 1978) (No. 77–784).

court.[4] Petitioner's counsel also testified that he allowed the trial to continue with an 11-person jury so as not to risk losing a "good" jury and the benefits of the defense testimony already introduced. Petitioner did not at the time object to this decision. Counsel also stated that no plea bargain short of life imprisonment was ever offered by anyone with the authority to make such an offer. Finally, counsel stated that he focused the defense primarily on establishing insanity and that as a result highly prejudicial information was allowed to come into evidence. Petitioner's counsel, an experienced criminal attorney, felt that insanity was the only available defense and, in fact, secured an instruction from the court to the jury on a theory of insanity significantly broader than the prevailing Arkansas test. Based on the record adduced we find no merit to these claims.

Petitioner also contends that counsel failed to investigate the circumstances surrounding his arrest, the search of his vehicle and a subsequent lineup identification. Petitioner's counsel admitted at the hearing held by the district court that he did not fully investigate the circumstances surrounding these events. Such a failure to investigate may in given circumstances constitute ineffective assistance of counsel thereby depriving the defendant of his constitutionally protected right to counsel. *See* American Bar Association, Standards Relating to the Prosecution Function and the Defense Function § 4.1, at 225–28 (Tentative Draft March 1970). *Cf. Garza v. Wolff,* 528 F.2d 208 (8th Cir. 1975).

In situations where the trial court has limited defense counsel in his or her efforts to render essential services for the defendant the Supreme Court has held that the right to counsel is too fundamental to allow courts to "indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). *See Holloway v. Arkansas,* —— U.S. ——,

98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (denial of individual appointment of counsel creating conflict of interest in one attorney's joint representation of three defendants); *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (denial of counsel's right to confer with defendant during recess); *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2250, 45 L.Ed.2d 539 (1975) (denial of right of counsel to make final summation).

In recent cases where the attorney's failure to provide essential services has been challenged this circuit has followed a flexible approach in requiring a petitioner to make some initial showing that his counsel's conduct may have prejudiced him in some way before a conviction will be reversed. In *McQueen I* we said:

> We believe a flexible approach . . . is called for. We ought not to intervene in the criminal process unless and until it can be shown that the alleged error itself prejudiced the petitioner in obtaining a fair trial. But this is *not* to say that, on remand, petitioner must prove his innocence even by so much as a preponderance of the evidence; nor should we be understood to suggest that the Court may trespass upon what properly would have been the jury's province of weighing the truth or falsity of this evidence at the original trial. What we are saying is that, here, the petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial. Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the omission of such evidence was harmless beyond a reasonable doubt.

498 F.2d at 220.

Decisions of two circuits have nevertheless questioned the need for a separate

4. On August 30, 1968, Reynolds was arrested and charged by information with the crimes of kidnapping and rape. Two days before trial, on February 25, 1969, the information was amended to charge first degree rape and kidnapping.

showing of prejudice in ineffective assistance cases. The Sixth Circuit in *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974), held that once ineffectiveness has been established, "[h]armless error tests do not apply . . . ." The Ninth Circuit established a similar rule in *Cooper v. Fitzharris,* 551 F.2d 1162, 1165 (9th Cir. 1977), where the court held, citing *Geders v. United States, supra,* and *Herring v. New York, supra,* that "once a petitioner has carried his burden of establishing ineffectiveness of counsel, his conviction must be reversed without regard to the presence or absence of prejudice." Although the Supreme Court's recent decision in *Holloway v. Arkansas, supra,* may be viewed as supportive of the results reached by the Sixth and the Ninth Circuits, the effect of the case may be limited to conflict of interest situations.[5]

*[margin annotation: overruled on rehearing en banc 586 F2d 1325 (1978)]*

In measuring effective assistance of counsel the question of harm or prejudice is often intertwined with the question of whether the alleged conduct of counsel constituted a breach of duty in light of the factual circumstances of the case. Counsel's exercise of competent services cannot be measured in the abstract or in a hypothetical sense. Whether we speak in terms of prejudice or some other standard, there must still be a reasonable nexus or relationship of the alleged breach of duty with the duty to act *under the facts of the case.* Counsel does not fail to render effective service if there is little or no likelihood that a reasonable lawyer under similar circumstances would consider the alleged defense reasonably essential to the case. As the Sixth Circuit has stated, counsel's duty is to assert all apparent "substantial defenses" available. *See Beasley v. United States, supra* at 696.

In the present case the failure to investigate the circumstances of petitioner's arrest could only approach a breach of duty if incriminating evidence were illegally seized at the time of the arrest and used in trial. This is not what occurred here. In order to constitute a breach of counsel's duty the failure to challenge the lineup must be somehow connected with some indication that there existed reasonable grounds to do so or that there exists some showing that the witness' trial identification was tainted by the lineup procedure. This is not claimed here. The failure of counsel to move to suppress the search of petitioner's car as an indicia of a breach of duty must as well turn on whether incriminating evidence was seized *and* due consideration given to the overall strategy of the defense. *Cf. Pope v. Swenson,* 395 F.2d 321 (8th Cir. 1968). Here petitioner's counsel reasoned that in light of the unimpeached identification of the victim establishing the overwhelming evidence of guilt, that the only substantial defense to pursue was one of insanity. Under the circumstances we cannot say petitioner's counsel failed to exercise the care and skill of competent counsel acting *under similar circumstances.*

Petitioner's final contention that he was denied a fair trial due to the week-long continuance of the trial must also be denied. The grant or denial of a continuance[6] in

---

5. Mr. Chief Justice Burger in his concluding paragraph recites:

In the normal case where a harmless error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client.

*Holloway v. Arkansas,* —— U.S. ——, ——, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978) (citations omitted).

The views expressed by the dissent in *Holloway* clearly indicate that a showing of prejudice is still a relevant consideration. *Id.* at 98 S.Ct. 1178–79 (Powell, J., dissenting).

6. The trial court denominated the delay as a "recess."

Arkansas is within the sound discretion of the trial court. *See Cox v. State,* 257 Ark. 35, 513 S.W.2d 798 (1974). No abuse of that discretion is apparent in view of the circumstances in which the continuance was issued.

The decision of the district court is affirmed.