393 A.2d 642

**COMMONWEALTH of Pennsylvania**

v.

**Linda BADGER, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 10, 1978.

Decided Oct. 5, 1978.

George E. Lepley, Jr., Asst. Public Defender, Williamsport, for appellant.

Allen E. Ertel, Dist. Atty., Robert F. Banks, First Asst. Dist. Atty., Williamsport, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Linda Badger and two co-defendants were arrested on March 18, 1974, and charged with criminal conspiracy, deliv-

ery, and possession of a controlled substance, namely heroin. On September 30, 1974, Badger appeared before the Court of Common Pleas of Lycoming County and expressed an intention to plead guilty. The Commonwealth was then asked to detail the facts of the case. Following an oral recitation of the alleged facts by the district attorney, defense counsel challenged the accuracy of a portion of the district attorney's summary, which implied Badger was the ringleader in the criminal transaction. Thereupon, the court asked Badger if she were admitting the facts as recited by the district attorney, and when she replied in the negative defense counsel requested permission to withdraw the guilty plea and the motion was granted.

Following the foregoing, Badger entered a plea of not guilty and, without objection by defense counsel, a nonjury trial proceeded before the same judge before whom the guilty plea had been entered. Badger was found guilty and sentenced to a term of imprisonment of five to twelve years.

On appeal to the Superior Court, the judgment of sentence was affirmed.[1] Badger filed a petition for allowance of appeal, and we granted the petition.

In the Superior Court, Badger was represented by new counsel who asserted trial counsel was ineffective, see *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1973), in failing to seek recusation of the judge following the withdrawal of Badger's guilty plea. The same issue was presented in Badger's petition for allowance of appeal and is now presented to this Court. Since we conclude this issue warrants reversal of the judgment of sentence, we shall not consider the other issues presented.[2]

The Superior Court reasoned that, had a motion to recuse been made, it would have constituted reversible error to

1. Judge Price concurred in the result. Judge Spaeth filed a dissenting opinion.

2. Badger also argues: 1) the trial court improperly excluded a hearsay statement; and, 2) the judgment of sentence is "manifestly excessive so as to inflict too severe a punishment on" Badger.

deny it,[3] but that counsel could not be deemed ineffective for failing to make the motion because the chances of success before another judge were not substantially greater than they were before the judge who heard the plea since the Commonwealth's evidence was particularly strong.

■ In this context, the test for determining the effectiveness of counsel is whether ". . . the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." [Emphasis in original.] *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Instantly, no reasonable basis for not requesting recusation is advanced and apparently there is none. Accordingly, counsel's failure to request recusation constitutes ineffectiveness and thus a new trial must be granted.

■■ The Commonwealth's argument to the contrary is based on the majority opinion of the Superior Court. That opinion in essence reasoned that the Commonwealth's evidence was so strong that it would be a futile gesture for Badger's counsel to ask for trial before another judge. Such an assessment of the

> ". . . strength of the prosecution's evidence against the defendant is, of course, one step in applying a harmless error standard. See *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)."

Cf. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 165–66 (1978). Essentially, a harmless error standard seeks to determine whether the error had a prejudicial effect. *Commonwealth v. Story*, 476 Pa. at 412–413, 383 A.2d at 166. See *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973); *Schneble v. Florida*, supra. Such an analysis in determining whether counsel is effective cannot be used because

**3.** The Commonwealth does not contest this portion of the Superior Court's analysis.

"assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) quoting from *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

This is not to say that in determining whether a "particular course chosen by counsel had *some reasonable basis* designed to effectuate [a] client's interests," *Commonwealth ex rel. Washington v. Maroney,* supra, 427 Pa. at 604, 235 A.2d at 352, a court should not "weigh the alternatives." Moreover, we reiterate that ". . . a finding of ineffectiveness [can] never be made unless [it can be] concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney,* supra, 427 Pa. at 605, n. 8, 235 A.2d at 353, n. 8. But in examining the alternatives, a court may not utilize a harmless error analysis, and the alternatives must be examined only as a means of determining whether the course chosen had some reasonable basis.

 Disregarding the harmless error analysis instantly, the alternative of having a judge, who was not aware of the plea, try the case would have offered a "potential for success substantially greater than" the tactics used. *Commonwealth ex rel. Washington v. Maroney,* supra, 427 Pa. at 605, n. 8, 235 A.2d at 353.

Judgment of sentence reversed and new trial ordered.

O'BRIEN, J., concurs in the result.

POMEROY, J., files a dissenting opinion.

NIX, J., joins in Part I of dissenting opinion by POMEROY, J.

POMEROY, Justice, dissenting.

In my judgment the Court today errs seriously in two respects. In the first place, the Court assumes that a judge

who hears a proffered guilty plea, quickly withdrawn, is thereby rendered disqualified to try the case non-jury on the merits. In the second place, the Court perpetuates the mistaken idea that each and every instance of ineffectiveness of trial counsel, as found under the "reasonable basis" test, is ground for a new trial.

For this Court to assume that a trial judge can no longer try a case with impartiality once he has heard a suggestion (for such it was here) of a guilty plea is to me a novel and dismaying proposition. I find it equally disturbing to say that in every case in which a lawyer representing a defendant in a criminal trial has made a mistake or a misjudgment or has been inattentive in neglecting to register an objection or make a motion, a new trial must be had, regardless of the degree of prejudice, if any, suffered by the client. Hence this dissent.

## I.

Although a full-dress guilty plea hearing may concededly contain enough material damaging to the defendant so that the judge who took the plea and conducted the accompanying colloquy should not, when the plea is withdrawn, try the case on the merits, it should not be assumed that such disqualification results in every plea situation. Every trial judge knows that impartiality is the hallmark of justice and that if he cannot be impartial, he must recuse himself. See Code of Judicial Conduct 3C(1)(a); ABA Standards Relating to the Function of the Trial Judge, § 1.7 at 34.[1] If we are to deal in presumptions, it should be that a judge is capable of

1. The Commentary to this section of the standards is also instructive: "Unless otherwise required by statute, a judge should avoid withdrawing from a case merely because a charge of bias has been made. *Wapnick v. United States*, 311 F.Supp. 183 (E.D.N.Y.1969). Demands for recusation can be used as an indirect means of attempting to choose the judge who will sit on the case. *United States v. Devlin*, 284 F.Supp. 477, 482 (D.Conn.1968). Delays in trial and inefficient use of judicial manpower are other possible consequences of such abuse. It is particularly important that the judge not use a frivolous charge of partiality as an excuse for withdrawing from difficult or unpleasant cases."

recognizing in himself when they appear the symptoms of bias and partiality, and that he will conduct himself properly in the light of that recognition.

I know of no law in Pennsylvania or elsewhere that says that exposure to a guilty plea automatically disqualifies the hearing judge from later trial on the merits; whether or not a judge should disqualify himself depends on the facts in each situation. Only if the facts are such that a judge should recuse himself, either *sua sponte* or on motion, can it be said with some assurance that it would be poor lawyering for the defense counsel not to make such a motion. Absent such a factual showing a presumption of judicial impartiality should obtain.

The Superior Court in the case at bar erroneously supposed that the lawyer for Badger had simply to move for recusation to have the court grant that relief.[2] Such a notion was dispelled by our decision in *Commonwealth v. Green*, 464 Pa. 557, 347 A.2d 682 (1975), where a suppression judge was sought to be disqualified from presiding at trial. We there pertinently stated:

"In effect appellant is arguing that the mere exposure to prejudicial evidence is enough to nullify a judge's verdict in a case. We cannot subscribe to such a view, for it is of the essence of the judicial function to hear or view proffered evidence, whether testimonial or in exhibit form, and to decide whether or not it should be admitted into evidence, or if admitted initially or provisionally, should later be excluded or disregarded.[1] For us to accept appellant's contention would be, in effect, to find disqualification of a judge to be a judge; it would go against the time honored practice in our courts in a myriad of situa-

2. In so supposing the Superior Court placed mistaken reliance on dictum in an opinion by this Court in *Commonwealth v. Goodman*, 454 Pa. 358, 362, 311 A.2d 652, 654 (1973). We there said that a judge should honor a request for recusation as trial judge when inadmissible but prejudicial information is received during a pre-trial proceeding.

tions, civil as well as criminal, and would add immeasurably to the workload of the trial courts."

> "[1] Professor McCormick in his treatise on evidence speaks of the 'wisdom of the practice adopted by many experienced trial judges in nonjury cases of provisionally admitting all evidence which is objected to if he thinks its admissibility is debatable, with the announcement that all questions of admissibility will be reserved until the evidence is all in.' McCormick, Evidence, § 60 at 138 (Cleary ed. 1972) (footnote omitted). It is the author's view that those who take the position that a judge cannot exclude inadmissible evidence from his mind do so 'misguidedly'. Id. at n. 87. See also *People v. Shepardson*, 251 Cal.App.2d 33, 58 Cal.Rptr. 809 (1967), in which the California Court of Appeals held that the mere fact that a confession which was obtained in violation of *Miranda* was received as part of the trial record did not constitute error when the trial court, acting as factfinder, stated that he disregarded the confession in determining guilt. To hold otherwise, the court said, 'would be contrary to the objectives sought in the development of the exclusionary rules of evidence' which are 'based on [the] probable prejudicial effect on the jury' of improper evidence. 251 Cal.App.2d at 38–39, 58 Cal.Rptr. at 813 (emphasis added). See generally, Note, Improper Evidence in Nonjury Trials: Basis for Reversal?, 79 Harv.L.Rev. 407 (1965)."

*Id.*, 464 Pa. at 561, 347 A.2d at 683. In my view, the rationale of *Green* leads inescapably to the conclusion that mere exposure of a judge to possibly inculpatory material does not automatically mandate a recusation.

On the record before this Court, I am satisfied that the trial judge had no reason *sua sponte* to remove himself from the trial of Badger's case, and by the same token would not have been obliged to grant a motion for recusation had one been made.[3]

> **3.** The majority suggests that counsel should have requested a judge "who was not aware of the plea" to try this case, but this was not a feasible alternative. Pennsylvania's twenty-ninth judicial district, comprised of Lycoming County, has but two judges. From the record before us it appears that Judge Raup tried Badger's case and presided also at the jury trial of another participant in the crime. A third co-conspirator pleaded guilty and was sentenced by the only other judge on the Court of Common Pleas of Lycoming County, Judge Greevy. Under the circumstances, the tentative tender of Badger's guilty plea and the withdrawal of the plea would likely be known to Judge Greevy, who (on appellant's theory) would also be susceptible to a charge of bias because of receiving the guilty plea of a co-conspirator. It is worthy of note in this connection that of the 59 judicial districts in Pennsylvania, 25, or fully 42%, are one-judge districts while 13 more, or 22%, are two-judge districts. Thus, 63% of our judicial districts have only one or two judges. Today's

At the commencement of trial, Linda Badger's lawyer told the court:

> "At this time, I think we have a guilty plea. Miss Badger intended to plead guilty to the indictment." N.T. at page 3.

The judge thereupon began to conduct the customary guilty plea colloquy. Before the proceeding had gone beyond the Commonwealth's narration of the occurrence, however, the defendant realized, and told the judge, that she could not admit to the prosecution's version of the facts. Badger's lawyer then announced that his client "wants to change her plea at this time back to not guilty." The court promptly accepted the plea of not guilty and proceeded to place on the record in a proper colloquy the defendant's waiver of a jury trial. *See* Pa.R.Crim.P. 1101. The trial then commenced.

Defendant at no time admitted to the facts alleged by the prosecution. Her initial tender of a guilty plea was obviously not made knowingly and understandingly, and cannot be considered an admission of guilt. See *Commonwealth v. Rosmon,* 477 Pa. 540, 384 A.2d 1221 (1978); *Commonwealth v. Robinson,* 452 Pa. 316, 305 A.2d 354 (1973); *Commonwealth v. Sampson,* 445 Pa. 558, 285 A.2d 480 (1971). *A fortiori* is this so since the plea was withdrawn even before acceptance.

It follows from what has been said that there is no basis in this record to conclude that Linda Badger's trial lawyer was unreasonable in not requesting the trial judge to recuse himself. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Indeed, in light of the waiver of a jury trial the lawyer might well have considered, for one reason or another, that a trial before this particular judge would best serve the interests of his client. See the opinion of the Superior Court herein, 238 Pa.Super. 284, at 291, 357 A.2d 547, 550 (1976).

decision, therefore, will require the special assignment of judges from other districts to preside at cases such as the one before us which are brought in one or two judge counties.

## II.

If it be assumed, *arguendo,* that defense counsel erred in failing to move the judge to recuse himself because there was no reasonable basis for not making such a motion, see *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), it is my view that the error was harmless and not a ground for new trial.[4] The Court, however, seems to be saying that counsel's ineffectiveness can never be harmless, and with this proposition I disagree.

The useful and sensible test of *Washington* is that counsel shall be deemed effective if he had some reasonable basis for his conduct; conversely, in the absence of a reasonable basis, the conduct should be deemed ineffective.[5] The test is not whether, employing the hindsight of a "Monday morning quarterback" in an evaluation of the record, other alternatives were more reasonable than the one chosen. Time and again this Court, in its application of the *Washington* test, see *id.,* 427 Pa. at 604, 235 A.2d 349, has properly made an independent review of the record to determine whether there was "a reasonable basis" for counsel's action or non-action. *E. g., Commonwealth v. Woody,* 440 Pa. 569, 574, 271 A.2d 477, 480 (1970). But in so doing we have assumed, I think mistakenly, that no inquiry is necessary as to whether or not ineffectiveness, if found, resulted in prejudice. This position finds support in footnote 8 of the *Washington* opinion, 427 Pa. at 605, 235 A.2d at 353, where it is said that if there is no reasonable basis for a decision of defense counsel, "his decisions *a fortiori* were prejudicial to the client." In so stating I believe the Court was in error.

4. This was an open and shut drug selling case. The evidence of guilt was clear and convincing, with no countervailing evidence presented by the defendant.

5. *Commonwealth ex rel. Washington v. Maroney, supra,* signaled a shift by this Court from the more stringent "mockery of justice" standard which had previously prevailed. See *Commonwealth ex rel. Mullenaux v. Myers,* 421 Pa. 61, 66–67, 217 A.2d 730, 733 (1966). *Commonwealth ex rel. LaRue v. Rundle,* 417 Pa. 383, 386, 207 A.2d 829 (1965).

Under the "mockery of justice" standard which we had espoused before *Washington,* see n. 5, *supra,* prejudice was inherent in any finding of ineffectiveness. The "mockery of justice" test required an examination of the record as a whole to determine whether or not the defendant had been deprived of a fair trial by his lawyer's ineptitude. But with the adoption of the "reasonable basis" test, under which counsel's conduct can be challenged in relation to individual instances of alleged ineffectiveness, prejudice is no longer necessarily an integral element of a finding of ineffectiveness. It therefore becomes necessary to determine by a separate scrutiny of the record whether or not prejudice to the defendant resulted. *Commonwealth v. Rice,* 477 Pa. 221, 228, 383 A.2d 903, 907 (1978) (opinion in support of affirmance). Such a two-step approach is developing in other jurisdictions. See in general Professor Strazzella's recent discussion of this subject in Strazzella, *Ineffective Assistance of Counsel Claims: New Uses, New Problems,* 19 Arizona L.Rev. 443 (1978).

A two-step analysis of a charge of ineffective assistance of counsel involves, first, ascertainment of whether there has been a failure to perform some duty owed by a defense attorney to his client; and second, determination of whether that failure prejudiced the client's defense. See *McQueen v. Swenson,* 498 F.2d 207, 218 (8th Cir. 1974). After noting an instance of ineffectiveness the analysis should shift to a scrutiny of the impact of that ineffectiveness on the appellant's case. In this regard, the harmless constitutional error rule should have continuing applicability. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Stanton Story,* 476 Pa. 391, 383 A.2d 155 (1978). The broad language of the opinion of the Court in *Chapman,* as quoted by the majority in today's opinion, *ante* at 644, is not at variance with the argument here advanced. The *Chapman* reference had to do with the total absence of counsel at trial, not with a lapse of counsel at a particular moment of trial.

The view here advanced is in accord with that of the Court of Appeals for the Third Circuit. That court has held that even the complete absence of counsel at a hearing on a motion to withdraw a guilty plea was harmless beyond a reasonable doubt under the circumstances of the particular case. *United States v. Crowley,* 529 F.2d 1066 (1976). Speaking for the court, Judge Van Dusen wrote in part as follows:

"In our view, neither *Gideon v. Wainwright,* supra, nor *Hamilton v. Alabama,* [368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)], forecloses application of the harmless error doctrine to the denial of counsel in this case. . . [Footnote omitted.]

"Furthermore, we believe that application of the automatic reversal rule of *Chapman's* footnote 8 to denial of counsel at a motion to withdraw a plea of guilty would be inconsistent with the more recent case of *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). In *Coleman,* a majority of the Court joined in Part III of Mr. Justice Brennan's opinion in which he makes it clear that '[t]he test to be applied is whether the denial of counsel at the [particular] hearing was harmless error under *Chapman v. California,* 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967).'

"In its most recent opinions, particularly those decided in this decade, discussing the right to counsel, the Supreme Court has observed that the role of counsel at various pre-trial and post-trial hearings depends upon the circumstances of the case and may differ significantly from the role of counsel at trial. [Footnotes and citations omitted.] In accordance with the approach of these more recent cases, *this court has held that in certain circumstances ineffective assistance of counsel can be non-prejudicial,* requiring the affirmance of a district court judgment in spite of such ineffective assistance. See *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3d Cir. 1970). In light of these cases and *Coleman v. Alabama,* supra, we conclude that the harmless error doctrine is

applicable to denial of counsel at a hearing on a motion to withdraw a guilty plea . . . ." [Emphasis added.] *Id.* at 1069–70. See also *United States ex rel. Tyrrell v. Jeffes,* 420 F.Supp. 256 (E.D.Pa.1976), and *United States ex rel. Burton v. Cuyler,* 439 F.Supp. 1173 (E.D.Pa.1977).

The Eighth Circuit has also drawn a valid distinction between the *Chapman* observation and the more customary situation where counsel is present but is claimed to have been ineffective in one or more respects. In *McQueen v. Swenson,* 498 F.2d 207, 218 (8th Cir. 1974) the Court of Appeals observed:

"Although in *Chapman,* the Supreme Court cited the right to counsel enunciated in *Gideon v. Wainwright,* supra, as one of those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error,' 386 U.S. at 23, 87 S.Ct. 824, we believe that there is an important and obvious difference between the total absence of counsel in *Gideon* and the ineffective assistance of counsel in the instant case. Since advice of counsel is so crucial to the exercise of a defendant's other rights, a total absence of counsel cannot but be harmful. Yet where a defendant is represented by counsel and it is the effectiveness of his counsel's performance that has slipped below the acceptable standard, the seriousness of this constitutional violation must be judged in terms of the particular factual circumstances of that case.

"It is a sensible view, as the Court pointed out in *Chapman,* that all trial errors which violate the Constitution do not automatically call for reversal."

See also *McQueen v. Swenson,* 560 F.2d 959, 961 n. 4 (8th Cir. 1977); *Reynolds v. Mabry,* 574 F.2d 978 (8th Cir. 1978). Contra, *Cooper v. Fitzharris,* 551 F.2d 1162, 1164–65 (9th Cir. 1977); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974).

The majority cites the recent United States Supreme Court decision in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) in support of the view that counsel's ineffectiveness cannot be harmless error. *Hollo-*

*way,* however, like *Chapman* itself, presents quite a different situation from the one at bar. There the Court found error in the trial court's failure to appoint a separate lawyer for each of three trial co-defendants. The error lay in the fact that the defendant's single appointed counsel was confronted with the risk of representing conflicting interests due to receipt of confidential information from each of his three clients. The Court held that ineffectiveness of counsel in the form of representing conflicting interests could not be judged by the harmless error standard, because the evil lay "in what the advocate finds himself compelled to *refrain* from doing," and it would therefore "be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client." *Id.* at 98 S.Ct. at 1182. The Court of Appeals in *Reynolds v. Mabry, supra,* expressed its belief that the effect of *Holloway* may be limited to conflict of interest situations. I venture to agree with this view, which I think is indicated by the inclusion of the following in the final paragraph of the *Holloway* opinion:

"In the normal case where a harmless error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. Compare *Chapman v. California,* supra, 386 U.S., at 24–26, 87 S.Ct. 824, with *Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and *United States v. Valle-Valdez,* 554 F.2d 911, 914–917 (CA9 1977). . . . It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks . . . . Thus, an inquiry into a claim of harmless error here would require, *unlike most cases,* unguided speculation." [Emphasis added.] 435 U.S. at 490, 98 S.Ct. at 1182.

To summarize, my basic disagreement with today's decision is that it denigrates the capacity of the trial judges of the Commonwealth to recognize the pitfalls of partiality and

to guard against them. A prophylactic requirement that only a judge who remains totally unaware of any suggestion of a guilty plea by the defendant is qualified to try a case is not only an overreaction to the demands of impartiality but is also incompatible with considerations of judicial economy. *See* note 3, *supra.*

In this particular case, moreover, a lawyer's failure to seek recusation by the trial judge, if it is to be considered an instance of ineffectiveness, must be held, under the circumstances, to have been harmless beyond a reasonable doubt. To hold that any ineffectiveness of counsel, no matter how trivial the fault, is *per se* ground for a new trial places an unjustified burden on the judicial system, one not required by the demands of due process of law in the trial of criminal cases.

It is for these reasons that I dissent.

NIX, J., joins in Part I of this opinion.