458 A.2d 575

**COMMONWEALTH of Pennsylvania**

**v.**

**Anthony WILCOX, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1982.

Filed March 25, 1983.

Allan L. Tereshko, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before McEWEN, JOHNSON and HOFFMAN, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence in which appellant challenges the denial of his motion to vacate his negotiated plea of guilty to second degree murder for which he was sentenced to a term of imprisonment for life. We affirm.

Appellant argues that his guilty plea was not entered knowingly and voluntarily since: (1) the prosecutor "bargained unfairly with an unrealistic threat of a potential death penalty"; and (2) he was not informed of his right to participate in the selection of prospective jurors. He also

alleges that trial counsel was ineffective (1) for failing to withdraw as counsel so as to allow new counsel to be appointed to represent him in seeking the vacation of his guilty plea; and (2) "because he was allowed to believe that the death penalty was a realistic alternative to pleading guilty to second degree murder." We find no merit to these contentions.

A summary of the evidence which the Commonwealth intended to introduce against appellant at trial was presented by the assistant district attorney during the guilty plea hearing and established that on the evening of October 29, 1980, appellant, together with his accomplice co-defendant, Quinn Williams, accosted and robbed James Healey on a street in North Philadelphia. The robbery victim was shot in the head with a pistol held by appellant and subsequently died of that wound. The assistant district attorney indicated at the guilty plea hearing that four eyewitnesses would have testified at trial on behalf of the Commonwealth that they witnessed appellant and Williams commit the robbery and saw appellant shoot the victim. The Commonwealth would also have presented testimony: (1) from the individual who lent appellant the weapon which inflicted the fatal wound; and (2) from a woman to whom appellant admitted the shooting when he fled to her home while still armed with the pistol.

The Commonwealth at the guilty plea hearing read into the record the entire text of a signed confession made by appellant to the police shortly after the shooting in which appellant admitted that on the afternoon of the shooting appellant and his companion had decided to commit a robbery in order to acquire money for gambling and that they borrowed a pistol from a friend of appellant and began to search for a victim. When appellant and Williams saw James Healey walking down the street they agreed to rob him. Williams, the accomplice, approached Healey and pushed him into an alley where appellant brandished a gun in the face of the victim and demanded money. While the accomplice went through his pockets, the victim struggled

and yelled for assistance. Appellant confessed that during the struggle he hit the victim on the head with the gun, that the gun fired and that he and Williams then fled the scene of the crime.

Appellant was subsequently arrested and charged with murder, involuntary manslaughter, robbery, conspiracy, possession of an instrument of crime and firearms offenses. Appellant filed in timely fashion a motion to suppress (1) his statement, (2) his arrest on grounds of lack of probable cause, and (3) the identifications of certain eyewitnesses who made photographic identifications of him. Following a hearing on April 8 and April 9, 1981, the distinguished Judge Albert F. Sabo denied the entire motion to suppress and, five days later, on April 13, 1981 appellant entered his negotiated plea of guilty to second degree murder and was sentenced to life imprisonment. This appeal follows the denial by the Common Pleas Court, after hearing, of the motion to vacate the guilty plea.

■ The Supreme Court observed, in *Commonwealth v. Shaffer*, 498 Pa. 342, 345–346, 446 A.2d 591, 592–593 (1982), that there is an important distinction between a pre-sentencing attempt to withdraw a guilty plea and a post-sentencing attempt to do so:

> The standard for allowing withdrawal of a guilty plea *prior to sentence* was articulated in *Commonwealth v. Forbes*, 450 Pa. 185, 191, 299 A.2d 268, 271 (1973) wherein we quoted with approval the following:
>
> > *Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.* A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty . . . . (emphasis in original) . . .
>
> Because the plea involves the simultaneous waiver of so many constitutional rights, a request to withdraw prior to sentencing is "liberally allowed." *Id.*, 450 Pa. at 190, 299

A.2d at 271; *see also, Commonwealth v. McLaughlin,* 469 Pa. 407, 366 A.2d 238 (1976).

When considering a petition to withdraw a guilty plea submitted to a trial court *after sentencing,* however, it is well-established that "a showing of prejudice on the order of manifest injustice," *Commonwealth v. Starr,* 450 Pa. 485, 490, 301 A.2d 592, 595 (1973), is required before withdrawal is properly justified. *See also, Commonwealth v. May,* 485 Pa. 371, 402 A.2d 1008 (1979); *Commonwealth v. Rosmon,* 477 Pa. 540, 384 A.2d 1221 (1978); *Commonwealth v. Riggins,* 474 Pa. 507, 378 A.2d 1229 (1977); American Bar Association Standards for Criminal Justice, Pleas of Guilty, Standard 14–2.1 (2d Ed.1980). Post-sentencing attempts to withdraw a guilty plea must sustain this more substantial burden because of the recognition that a plea withdrawal can be used as a sentence-testing device. *Commonwealth v. Starr,* 450 Pa. at 489, 301 A.2d at 594 (1973). If a plea of guilty could be retracted with ease after sentencing, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. *Id.* 498 Pa. at 345–46, 446 A.2d at 593.

*See also, Commonwealth v. Anthony,* 307 Pa.Super. 312, 453 A.2d 600; *Commonwealth v. Herberg,* 306 Pa.Super. 245, 452 A.2d 536 (1982).

 The Supreme Court observed that manifest injustice exists where the plea was involuntary, or was entered without knowledge of the charge and further stated that "some demonstration must be made that the plea was *not voluntary* or that the plea was entered *without knowledge of the charge* such that refusing to allow the petitioner to withdraw his plea would amount to a manifest injustice." *Commonwealth v. Shaffer, supra* 498 Pa. at 347, 446 A.2d at 593, *citing* American Bar Association Standards for Criminal Justice, Pleas of Guilty, Standard 14–2–1(b)(ii). Appellant has failed to provide such a demonstration in this case.

The initial argument of appellant that his guilty plea was involuntary because the prosecutor unfairly bargained with an unrealistic threat of the death penalty conspicuously ignores the true reason for the entry of his plea of guilty to second degree murder, namely, escape from the death penalty. Under the terms of the negotiated plea, the Commonwealth agreed to forego its opportunity to convict appellant of first degree murder and seek imposition of the death penalty, and, in addition, agreed to nol pros the remaining charges in return for his plea of guilty to second degree murder. The responses which appellant made to certain questions during the careful and thorough guilty plea colloquy conducted before Judge Sabo made amply clear that his desire to avoid exposure to the death penalty was the reason for his plea since he was specifically apprised that the district attorney would seek a conviction on the charge of murder in the first degree and the imposition of the death penalty if he chose to proceed to trial instead of enter the plea.

We further observe that the claim of appellant that there was no realistic possibility that he could be convicted of first degree murder and sentenced to death is not consistent with the summary of the evidence provided by the district attorney or with the testimony provided by the medical examiner at the trial of co-defendant Williams to which the hearing judge made reference during the hearing on the motion to vacate the plea. The testimony of the medical examiner established two crucial facts: (1) that the bullet entered the head of the victim from the right rear and penetrated to the left frontal part of his head; and (2) that there were no powder burns on the head of the victim, a fact which indicated that the gun was approximately twelve inches from the head at the time it fired. As a result, the hearing judge observed, this testimony would: (1) allow a jury to find that the victim was shot from behind; and (2) allow a jury to infer a specific intent to kill and, thereby, support a conviction of first degree murder with a possible sentence of life imprisonment or imposition of the death

penalty. *See Commonwealth v. Green,* 493 Pa. 409, 426 A.2d 614 (1981). (specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the body of another); *Commonwealth v. Robinson,* 468 Pa. 575, 583, 364 A.2d 665, 669 (1976) (period of premeditation necessary to form specific intent may be very brief); *Commonwealth v. O'Searo,* 466 Pa. 224, 238–39, .352 A.2d 30, 37 (1976) (design to kill can be formulated in a fraction of a second). *See also Commonwealth v. Gardner,* 490 Pa. 421, 416 A.2d 1007 (1980). Even if the death penalty had not been imposed following a conviction of appellant by a jury of first degree murder, he could have received, in addition to the mandatory life sentence, additional terms of imprisonment consecutive to the life sentence on the charges of conspiracy, robbery and violations of the Uniform Firearms Act.[1] Appellant would have faced, under such circumstances, a potential penalty of ten to twenty years on each of the charges of conspiracy and robbery which could have been imposed consecutively, *see e.g. Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Dreibelbis,* 493 Pa. 466, 426 A.2d 1111 (1981), and could have been convicted of violations of the Uniform Firearms Act, each of which carries a potential penalty of two and a half to five years. *See Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979); *Commonwealth v. Jeter,* 275 Pa.Super. 89, 418 A.2d 625 (1980). Thus, appellant gained a substantial benefit by pleading guilty to second degree murder since, by so doing, he not only eliminated the potential for the imposition of the death sentence but he also avoided potential convictions and sentences on the other charges which the Commonwealth had agreed to nol pros in accordance with the terms of the negotiated plea.

**1.** Appellant was charged with violations of 18 Pa.C.S.A. § 6106 and § 6108 under the Uniform Firearms Act, 18 Pa.C.S.A. § 6101 et seq. Convictions of and sentencing upon the other weapons offenses, 18 Pa.C.S.A. § 907 and 18 Pa.C.S.A. § 908 would have been barred by 18 Pa.C.S.A. § 906, assuming arguendo that appellant would have been convicted of criminal conspiracy, 18 Pa.C.S.A. § 903.

Appellant would still have gained a benefit by entering the negotiated plea even if we assume that a jury would not have convicted him of first degree murder but instead had returned a verdict of guilty of second degree murder, since, under the terms of negotiated plea, the Commonwealth agreed to nol pros all remaining charges, including robbery, conspiracy and violations of the Uniform Firearms Act as discussed above. Counsel for appellant himself explained to appellant during the course of the guilty plea colloquy that, had he requested a jury trial, the jury would also consider whether he was guilty of the additional charges and that a conviction on those charges could have led to a substantial term of imprisonment consecutive to a life sentence for second degree murder. Appellant indicated during the guilty plea colloquy that he understood this possibility.[2] We conclude that the contention of appellant that he did not enter his guilty plea knowingly and voluntarily is frivolous and without any basis in the record.

Appellant next contends that he was not informed of his right to participate in the selection of prospective jurors. The record of the guilty plea colloquy flatly contradicts this contention. We observe that, during the hearing on the motion to vacate the guilty plea, appellant himself agreed with the hearing judge, after a review of the notes of testimony of the guilty plea hearing, that he had been informed by the trial judge that he had the right to be tried before a jury of twelve persons and that he could participate in the selection of the twelve jurors. (N.T. 5/14/81, p. 17). We reject this claim without further discussion.

2. Judge Sabo further apprised appellant during the hearing on his motion to vacate his guilty plea that, as a result of the representation of trial counsel, he had fared better by entering the negotiated plea than had his co-defendant who had neither possessed nor fired the weapon. The co-defendant had gone to trial, prior to the entry of the guilty plea by appellant, and was convicted of second degree murder as well as of criminal conspiracy. As a result, the co-defendant received a further sentence of five to ten years on the conspiracy conviction, to run concurrent with the life sentence imposed on the murder conviction.

Appellant finally contends that he was denied the effective assistance of counsel: (1) because counsel, when defendant decided to withdraw his guilty plea, became inherently ineffective since he "could not be expected to vigorously undo all that he had just completed"; and (2) because he was allowed to believe that the death penalty was a realistic alternative to pleading guilty to second degree murder. We find no merit to either one of these contentions. It is quite clear that the reason why the court refused to allow appellant to withdraw his guilty plea was not due to any deficiency in the stewardship of his counsel but was rather the result of the conclusion by the hearing judge that the testimony of appellant at the hearing on his motion to vacate his plea was simply not credible. We need not comment further on the final allegation of appellant of ineffective assistance since our previous discussion makes clear that this argument is wholly without merit.

Judgment of sentence affirmed.