411 A.2d 806
**COMMONWEALTH of Pennsylvania**
v.
**Charles CRAFT, Appellant.**
Superior Court of Pennsylvania.
Submitted July 10, 1979.
Filed Oct. 12, 1979.

Victor J. DiNubile, Jr., Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Judge:

The question raised in this appeal is whether appellant's responses during the plea colloquy sufficiently satisfied the requirement of a knowingly entered plea of guilt to murder of the third degree.[1] The plea was entered pursuant

---

* Justice ROBERT N. C. NIX, Jr. of the Supreme Court of Pennsylvania and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

1. A threshold question in this case is whether appellant has waived his challenge to the voluntariness of his guilty plea for failing to petition the trial court to withdraw his guilty plea as required by Pa.R.Crim.P. 321(a) which was in effect at the time appellant's plea was entered. The appellant filed a pro se motion to "vacate and reconsider the sentence imposed" with the trial court. In a supplemental brief to this court, appellate counsel concedes that no petition to withdraw the guilt plea was filed with the lower court. Appellant counsel states that at the time he filed appellant's brief, counsel was not aware that the pro se motion filed by the appellant was not a petition to withdraw the guilty plea. Appellate counsel was appointed after appellant filed this appeal. Apparently, at the time appellate counsel was appointed, there was nothing in the record to indicate that the motion filed by appellant was not a petition to withdraw and appellate counsel proceeded under the impression that a petition to withdraw had been filed.

The trial court entered a written opinion in this matter discussing the issue of the voluntariness of the plea. We therefore have the benefit of the lower court's analysis of this issue. The record colloquy is extensive. In light of these facts and in light of the fact that appellant's original petition was uncounseled, we believe the purpose of Pa.R.Crim.P. 321(a) have been met. We therefore will reach the merits of the issue raised by appellant. *Cf. Commonwealth v. Fiero*, 462 Pa. 409, 341 A.2d 448 (1975) (PCHA petition should not be dismissed when petition is uncounseled).

to a plea agreement whereby the Commonwealth agreed to certify that the crime did not rise higher than murder of the third degree and further recommend a sentence of from eight to twenty years. During the course of an extremely thorough examination by the court, appellant express some hesitancy in conceding that the killing was a malicious one.

BY THE COURT: * * *

Third-degree murder includes any unlawful killing of a human being with malice, but where no intention to kill exists, or can reasonably or fully be inferred. Thus if there is an unlawful killing where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, but if no intention to kill can be inferred, either expressed or implied, from the facts, then the verdict should be guilty of murder in the third degree. Now, malice in murder of the third degree is the malicious design to do harm, but not to kill. Third-degree murder is, therefore, the unlawful taking of a human life with malice aforethought with no specific intent to kill, but with an intention to inflict grievous bodily harm, and not to take human life, but, as a result of the injury inflicted, death results.

Malice is the thing that the state distinguishes murder from any other type of homicide. Malice may be of two kinds; either direct malice, where there exists a particular ill-will against a particular person, or indirect malice as in the case of a crime committed with depravity of heart, wickedness of disposition, and indifference to social duty, hardness of heart, evil purpose, cruelty, recklessness of consequences, a reckless disdain for consequences of action, and a disposition of mind regardless of social duty.

If any person has so acted, he is regarded, in the eyes of the law, as having acted with malice.

Thus, as I said, malice is the thing that distinguishes murder from other types of homicide.

Now, do you understand that by pleading guilty you are admitting, on May 28, 1977, you did kill and slay John Viney. Do you understand that?

A. Yes, sir.

Q. Is that what you are admitting?

A. Without malice.

Q. Well, you have heard my reading of malice. Now, it can't be without malice if it is murder.

A. Well, I didn't quite understand it.

Q. I beg your pardon?

A. Your Honor, I say the answer is yes to what you asked me, but I thought you did say something about to inflict grievous—

Q. I can't hear you. Speak up.

A.—to inflict grievous harm to, I believe, you said maim, or something. There was no intention there, either.

Q. Well, what did you intend to do when you stabbed him?

A. To keep him from hurting me.

Q. Well, you intended to stab him, didn't you?

A. Well, that is the only way I could, you know, cut him or something before he had a chance to do me in.

Q. Well, then—

MR. JOHANSON: If your Honor please, may we go off the record?

(Discussion off the record, between Mr. Johanson and the Defendant).

At another point in the questioning, the following transpired:

By THE COURT:

Q. Now, as I stated, do you understand, by pleading guilty, you lose the opportunity to claim this defense, justification or excuse. That is, you cannot plead guilty and claim, for instance, that you acted in self-defense. Do you understand that, sir?

A. Yes.

Q. Now, is there anything else you would like to add, sir, at this particular point?

A. Well, the only thing I can say, Your Honor, I suppose my way of looking at it is more or less self-defense, and it is just unfortunate that death occurred.

Q. Well, do you feel there was any self-defense involved in the matter?

A. Yes, sir, I do.

MR. JOHANSON: Off the record, Your Honor.

(Discussion off the record between Mr. Johanson and Defendant).

MR. GORDON: Your Honor, I think at this point counsel would have to explain something on the record to his client, or question him concerning that.

THE COURT: Yes, place it on the record.

BY MR. JOHANSON:

Q. Mr. Craft, do you understand that self-defense is, by definition of the defense of yourself when you are threatened with death or serious bodily harm at that particular point in time. It is not self-defense if it is in answer to previous inflictions of bodily harm, or the fear of possible future inflictions of bodily harm. For it to be self-defense in a legal sense within the definition of the law, it has to be an immediate threat at that particular point in time to your life or to grievous bodily harm. Now, do you understand that definition of self-defense?

A. Yes, sir.

Q. Now, what occurred here, you were not, at the time of this particular unfortunate act, you were not then in immediate and imminent danger of your life, or grievous bodily harm, were you?

A. Well, the only thing I can say to that is the fact I could have been. I just had been before.

Q. You had been before?

A. Well, I said I could have been at that time, too, but—

Q. But were you? Not that you could have been, but were you?

A. I don't know. I suppose—

MR. GORDON: Your Honor, perhaps counsel can take a couple of minutes and go over this with his client. I think perhaps this aspect of it is not clear.

THE COURT: All right. Take a break for a few minutes then.

(Whereupon, at this time, a short recess is taken.)

Following the discussion with counsel, the colloquy continued and appellant expressed no further hesitancy in accepting the fact that the killing was a malicious one. The court again carefully explained the elements of the defense of self defense and the nature of legal malice. The appellant was given every opportunity to express any reservation he may have had, but appellant gave no indication that he had any. Finally, the court directed the prosecutor to state in appellant's presence the Commonwealth's version of the stabbing. At the completion of the prosecutor's recitation of his evidence, the following questions and answers appear:

BY THE COURT:

Q. Now, Mr. Craft, you heard the reading of the alleged facts. Are they substantially correct?

A. Yes, sir.

Q. Is there any part of them you disagree with or you want to add to?

A. No sir.

THE COURT: All right. Do you have anything further then, counsel? Do you wish to ask him any questions?

MR. GORDON: No, Your Honor.

THE COURT: How about you?

BY MR. JOHANSON:

Q. Charles, is there anything else you would like to say to the Court about this incident at this time?

A. No.

MR. JOHANSON: He has nothing further to say.

THE COURT: Then we will proceed to sentencing.

Whatever misunderstanding that may have been present prior to his conferring with his attorney was clarified as a result of that discussion. This is not a case where a criminal

458

defendant attempts to enter pleas of guilty and yet maintains his innocence, or where a defendant pleads guilty but makes a statement wholly incompatible with guilt. *See e. g., Commonwealth v. Sampson,* 445 Pa. 558, 566, 285 A.2d 480, 485 (1971) (Roberts, J., concurring). The instant case is much closer to the situation in *Commonwealth v. Rosman,* 477 Pa. 540, 384 A.2d 1221 (1978), wherein a criminal defendant expressed his personal and private conviction in the correctness of his actions; however, the defendant conceded that his actions were legally wrong and deserving of punishment. Under the circumstances in *Rosman,* it was held that the guilty plea colloquy demonstrated that the defendant had knowingly and voluntarily plead guilty to third degree murder. *See also Commonwealth v. Robinson,* 452 Pa. 316, 305 A.2d 354 (1973). Here, appellant heard the case against him and accepted the facts substantially as stated by the prosecution's evidence. Under the Commonwealth's facts, this was clearly a malicious killing.

The judgment of sentence of the Court of Common Pleas is affirmed.