483 A.2d 953

**COMMONWEALTH of Pennsylvania**

**v.**

**Mark SIMMONS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 2, 1984.

Filed Nov. 2, 1984.

58

Cheryl Anne Furey, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and BECK and HOFFMAN, JJ.

SPAETH, President Judge:

This is an appeal from judgment of sentence for robbery, criminal conspiracy, and theft. Appellant argues that the trial judge should have recused himself.[1] We agree, and therefore vacate the judgment of sentence and remand for new trial.[2]

On January 19, 1981, three men robbed a 78 year-old man at knifepoint, taking his money and car. Appellant and another man were caught after a police chase and were charged with the robbery. Appellant's counsel filed a petition for a mental examination to determine appellant's competency to stand trial. The petition was granted, and on November 24, 1981, appellant was found incompetent to stand trial. The psychiatric report stated: "The defendant currently appears to have a major mental illness which would appear to render him unable to cooperate with counsel in his own defense. It is felt that he is not capable of standing trial at the present time. It is recommended that he be committed for a period of 30 days to the Hahnemann Psychiatric Facility at the Philadelphia prisons for further

---

1. The Commonwealth argues that at the post-verdict motions hearing defense counsel abandoned this argument. On the contrary, counsel pressed the argument with vigor, N.T. 6/15/82 at 2–16, and the trial court responded, both at the hearing, *id.,* and in its opinion, slip op. at 9–20.

2. We need not address appellant's other arguments, which are: 1) that the court erred in permitting hearsay testimony at the sentencing hearing; 2) that the court erred in refusing to allow a psychiatric examination to determine appellant's sanity at the time of the incident; and 3) several instances of alleged ineffectiveness of counsel.

evaluation and treatment." The trial court ordered appellant committed to the Forensic Unit of the Philadelphia Detention Center for a period not to exceed sixty days. On January 5, 1982, appellant was again examined. The psychiatric report, dated January 25, 1982, stated that appellant's condition was "consistent with the diagnosis of Schizophrenia-Paranoid Type...." The report further stated that appellant was "able to proceed to trial ... under the condition that he had received medication and inpatient treatment at that time," and that his paranoia was in remission but he would "need close follow-up ... and continued monitoring." On February 18, 1982, appellant was found competent to stand trial.

On March 2, 1982, appellant appeared before the trial court to plead guilty. The court conducted an on-the-record colloquy during which appellant admitted his guilt:

> Q. [THE COURT]: In other words, by pleading guilty to this count of the robbery information, you are saying that on January 19, 1981, in Philadelphia County, in the course of committing a theft, you threatened a man by the name of Walter Shelton and put him in fear of immediate, serious bodily injury and by means of that, you were able to take his car, wallet and keys. Do you agree that's what you did?
>
> A. [APPELLANT]: Yes, sir.
>
> N.T. 3/2/82 at 41.

Later in the colloquy the court asked:

> Q. Are you pleading guilty because you are, in fact, guilty?
>
> A. I don't understand what you're saying.
>
> Q. Are you pleading guilty because you are guilty?
>
> MR. DAVIS [ASSISTANT DISTRICT ATTORNEY]: Did you do it, is what he's asking you?
>
> MR. CORCORAN [DEFENSE COUNSEL]: The judge wants to know if you did do what you're charged with? Were you with Jerome Gay and did you do what they charged you with?
>
> THE DEFENDANT: No.

BY THE COURT:

Q. What's that?

A. No.

MR. DAVIS: Can he talk to his lawyer?

THE COURT: Yes.

N.T. 3/2/82 at 44, 45.

After appellant had consulted with his attorney, the Commonwealth presented the facts of the case. The court again questioned appellant:

BY THE COURT:

Q. Mr. Simmons, did you hear the district attorney read that?

A. Yes, sir.

Q. Did you understand what he said?

A. Yes, sir.

Q. Now, do you agree with those facts?

A. No, sir.

Q. Well, a few minutes ago you indicated to me you were guilty. Now you're saying you're not guilty, is that what you're saying?

A. I am not guilty to none of them charges.

Q. May I ask you why did you say you were guilty when we asked you at the very beginning of this?

A. I was talking to my lawyer. I thought I had no choice.

Q. Well, you have a choice. You can plead guilty or you can plead not guilty and go to trial.

Mr. Simmons, do you wish to have a trial?

A. Yes.

Q. A jury trial?

A. Yes.

N.T. 3/2/82 at 50–51.

The court then heard and denied a suppression motion. A jury was selected and dismissed until the next day. However, on the next day, when court resumed, defense counsel informed the court that "both [appellant and his mother] are insisting that he go to trial non-jury," adding, "Now, I

don't believe that [appellant] is competent to stand trial."
N.T. 3/3/82 at 3. Counsel requested another psychiatric
evaluation. The court granted the request. Appellant was
examined, and the psychiatrist testified that in his opinion
appellant had "a rational and factual understanding of the
proceedings" and "[p]sychologically [he] saw no reason why
[appellant] could not proceed to trial...." N.T. 3/3/82 at
22, 23. The court then asked counsel their positions. The
assistant district attorney responded that he had no objec-
tion to appellant waiving a jury and proceeding to trial
before the court "so long as several things were clear" to
appellant: "Number one, that [appellant] is in the career
criminal program and the Court would know, of course, that
he has a record of at least two felonies. The second thing
is that Your Honor heard him attempt to tender a guilty
plea yesterday and there is a possibility that might affect
Your Honor." N.T. 3/3/82 at 25. Defense counsel then
asked the trial judge to recuse himself, but the judge
refused:

MR. CORCORAN: Your Honor, I think it would be
incumbent upon me to ask the Court to recuse himself
because of the guilty plea and the things that were said
during the guilty plea and the testimony that was heard
in the [suppression] motion.

THE COURT: Well, I would be very glad to recuse
myself if some other judge in the program [career crimi-
nal program] would take the case as a waiver judge.
However, there are no particular judges available at this
time.

N.T. 3/3/82 at 25–26.

■ We hold that the trial judge should have recused
himself. Appellant's right to be tried before an impartial
judge should not have been subordinated to the administra-
tive matter of the availability of another judge assigned to a
particular program. In *Commonwealth v. Goodman*, 454
Pa. 358, 362, 311 A.2d 652, 654 (1973), the Court held: "[A]
judge should honor a request for recusation where preju-
dicial information is received in a pre-trial proceeding that

would be otherwise inadmissible during the trial of the cause." In *Commonwealth v. Conti,* 236 Pa.Super. 488, 345 A.2d 238 (1975), this court held that a new trial was required where in a non-jury trial the trial judge was informed through testimony that the defendant had pleaded guilty at his preliminary hearing. And in *Commonwealth v. Walls,* 261 Pa.Super. 321, 325 n. 2, 396 A.2d 419, 421 n. 2 (1978), we stated: "In a case where the judge hears highly prejudicial testimony, such as a withdrawn guilty plea, he should recuse himself from sitting as factfinder...." *See also, Commonwealth v. Badger,* 482 Pa. 240, 393 A.2d 642 (1978) (trial counsel held ineffective for failing to request recusal in non-jury trial where judge had heard withdrawn guilty plea).

The Commonwealth, citing *Commonwealth v. Casella,* 312 Pa.Super. 375, 458 A.2d 1007 (1983), argues that the trial judge, unlike a jury, was capable of disregarding prejudicial matters. *Casella,* however, was an unusual case and must be limited to its facts. The defendant there was charged with burglary, criminal trespass and simple assault. The testimony at the trial was that the defendant

secretly entered a woman's apartment; that when discovered, he refused to identify himself; that he had "a hankie on his face and a pair of gloves and a rope around his neck," N.T. 11/9/79 at 12; that when the woman began screaming, he came toward her and put his hand over her mouth to stop her screaming; and that eventually he ran off. *Id.* at 13.

*Id.,* 312 Pa.Superior Ct. at 376, 458 A.2d at 1008.

The defendant pleaded guilty to criminal trespass and not guilty to burglary, but then changed his plea to not guilty on both charges, and proceeded to a non-jury trial before the judge who had heard his withdrawn guilty plea. The judge found him guilty and imposed two sentences: one for criminal trespass and one for burglary. On appeal, the defendant argued that the offenses merged and that the judge should not have imposed two sentences. We agreed, holding that there had been only one unlawful entry, and

64

we therefore vacated the sentence for criminal trespass. The defendant also argued that counsel was ineffective for failing to ask the trial judge to recuse himself. We held that in the particular circumstances the judge was not required to recuse himself, explaining that

> a judge may be relied upon to know—as a jury may not be—that a guilty plea is not an unambiguous event. Even so, if this were only a criminal trespass case, we might remand for a hearing, at which counsel could explain why he didn't ask the judge to recuse himself. But as our discussion of merger has shown, this is not a criminal trespass case but a burglary case, and as to the charge of burglary, appellant pleaded not guilty

*Id.*, 312 Pa.Superior Ct. at 379, 458 A.2d at 1009.

The situation in this case is entirely different. Here the guilty plea *was* an unambiguous event. There could be no doubt about the legal significance of the acts charged, and there was no question that appellant had admitted his guilt to the trial judge. Thus the judge knew things he could not possibly put out of his mind. In these circumstances the judge's partiality could reasonably be questioned. Indeed, at one point, before he deferred to administrative considerations, the trial judge recognized this fact, and cautioned defense counsel: "I'll tell you. I don't think it is a very good idea. I heard him practically plead guilty yesterday." N.T. 3/3/82 at 10.

The Commonwealth argues that "appellant must point to some specific acts of bias or prejudice." Brief for Commonwealth at 5. However, such a showing is unnecessary where the trial judge has heard a guilty plea. In *Commonwealth v. Goodman, supra*, the Court held:

> Justice ... requires that we relieve the defendant of the responsibility of establishing that the information in fact influenced the court's decision. If it is established that the information received during the pre-trial proceeding would have been incompetent in the subsequent proceeding and that it was of a sufficiently inflammatory nature to arouse a prejudice against the defendant he

need not demonstrate that the information actually influenced the court's actions. We are impressed with the wisdom of the ABA § 1.7 Standards Relating to the Function of the Trial Judge which provides:

"The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case *or whenever he believes his impartiality can be reasonably questioned.*" (Emphasis supplied). *Id.,* 454 Pa., at 361, 311 A.2d at 654.

Finally, the Commonwealth argues that appellant waived his right to be tried before another, impartial, judge. In some circumstances a party may waive his right to have a judge recuse himself, *Commonwealth v. Corbin,* 447 Pa. 463, 291 A.2d 307 (1972); *Commonwealth v. Stanton,* 294 Pa.Super. 516, 521 n. 6, 440 A.2d 585, 588 n. 6 (1982), but here there was no waiver.

Defense counsel twice moved for recusal. N.T. 3/3/82 at 25–26, 50. Each time the trial judge refused to recuse himself, stating that no other judge in the career criminal program was available to hear the case. Immediately after his first refusal to recuse himself, the trial judge made the following statement to appellant:

THE COURT: The jury has been picked. I'd like to say this to the defendant.

Sir, what is your request? You have a right to waive—you have the right to waive a jury trial. *Your choice is either myself* and I do know that you tried to plead guilty. At some point you admitted some things yesterday in the guilty plea colloquy. You may not have—the record will speak for itself. You may not have bluntly stated that you did the acts complained of, but you implied it in some way during the guilty plea colloquy. You then indicated that you were not guilty at some point in the colloquy and we went ahead and ordered the jury panel and picked the jury.

*So you have your choice in trying the case before me.* I was present. I do know that you withdrew from entering a guilty plea.

I also know that you have a record because you would not be in the career criminal program if you didn't have a record.

My recommendation to you is to go ahead with the jury. If you insist on having a non-jury trial before me, I will hear your case and I'll do my very best to be fair about that.

N.T. 3/3/82 at 27–29 (emphasis added).

The trial judge then stated that he wished appellant and his mother to know that if appellant waived a jury, "the sentence is not going to be any different. I'm not going to hold it against him because he requested a jury trial." N.T. 3/3/82 at 29. When defense counsel then indicated that he understood from appellant's mother that appellant "wants to go non-jury", *id.*, the trial judge, after the mother had been sworn, asked the mother whether she knew why appellant "wishe[d] to waive a jury trial before me as the Judge," to which the mother replied, "I don't know, Your Honor". N.T. 7/3/82 at 31. The judge then questioned appellant:

BY THE COURT:

Q. Mr. Simmons, yesterday you had what is known as a colloquy, that's a discussion between the Judge and there was some discussion about your pleading guilty in the case, is that correct?

A. Correct.

Q. You said at the end that you were not guilty and wished to have a trial. We then brought in a jury panel and picked a jury.

Now I understand you wish to waive a jury trial and just have the case before me for some reason, is that right?

A. Yes.

Q. Any particular reason why you wish to do that?

A. No, sir.

Q. Which would you rather have, a judge hear the case, *which would be me,* or a jury which has already been picked?

A. You.

Q. Why would you want to have me since I heard something about some possibility of you pleading guilty? I heard that. Do you understand that?

A. Yes, sir.

Q. Also I know that you have a record or you would not be in what is called the career criminal program. Do you understand that?

A. Yes.

Q. You still wish to have me hear the case without a jury?

A. Right.

Q. Are you sure about that?

A. Yes, sir.

THE COURT: Do you have any comment Mr. Corcoran?

MR. CORCORAN: No, sir.

THE COURT: Let me talk to the lawyers for a minute. (Off the record conversation between counsel and the Court).

THE COURT: Since the defendant has indicated he prefers to have a judge, namely myself, hear the case rather than a jury, I'll hear the case.

N.T. 3/3/82 at 32–34 (emphasis added).

 On this record we cannot find that appellant waived his right to be tried before another, impartial, judge. Appellant was presented with an improperly restricted choice ("Your choice [is] in trying the case before me". "Which would you rather have, a judge hear the case, which would be me, or a jury....?") He was never given the choice of having a judge whose impartiality could not reasonably be questioned hear the case. It was especially important to make sure that appellant understood that he had a right to a different judge, given the psychiatric evaluations of appellant's mental condition.

When defense counsel argued in support of appellant's post-trial motions that the trial judge should have recused himself, the judge responded:

MR. CORCORAN: Your Honor, through all that you have read, it's in the record there you told him his choice was a jury trial or a nonjury trial in front of you. I believe that the proper thing would have been to disqualify yourself and sent it back to [Room] 625.

THE COURT: No sir, I couldn't do that for reasons I have explained to you. There were no other Judges in the career criminal program and we have the situation which happens quite a bit. Lawyers for the defense attempt to get out of this program by requesting a nonjury trial. It happens a lot. Public Defenders have a standard ploy at this time. They use it almost every day, every case.

MR. CORCORAN: I'd like to indicate for the record that I am not from the Public Defender's Office.

THE COURT: I know you are not. I am saying this is a very common effort to try and get out of the career criminal program. First you try to waive a jury trial and then you say the Judge should recuse himself because he knows he has a record because he's in the career criminal program. It has been tried in the various high percentage of the cases that have come before me.

MR. CORCORAN: That may be so. I have no knowledge of that. I think Your Honor would agree from the record, up to that point that that wasn't our intention.

THE COURT: I am not saying it was. I am not trying to guess your motive. I am only saying this type of situation develops regularly and if it were permitted to take place, there would not be any career criminal program because everybody would attempt to get out of it by using that device.

N.T. 6/15/82 at 12-13.

We do not find this statement by the trial judge persuasive. It acknowledges that appellant's counsel was not engaged in a "ploy", and as already discussed, the administrative

availability or not of "other Judges in the career criminal program" was not a sufficient reason for the judge to refuse to recuse himself.

The judgment of sentence is vacated and the case is remanded for a new trial before a different judge.