**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Daniel TAINAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 1, 1999.

Filed June 25, 1999.

Brian J. McMonagle, Philadelphia, for appellant.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before POPOVICH, STEVENS and BROSKY, JJ.

STEVENS, J.:

¶ 1 Daniel Tainan appeals from the May 17, 1994 judgment of sentence of the Court of Common Pleas of Philadelphia County. We affirm.

¶ 2 Tainan was arrested on charges that he repeatedly raped and molested the twelve-year-old niece of his girlfriend. On November 1, 1993, at a hearing before the Honorable Ricardo C. Jackson, Tainan entered a plea of *nolo contendre* to one count of rape pursuant to a plea agreement, which was not negotiated as to sentence. A pre-sentence report was prepared, which indicated that Tainan had two prior rape convictions. Despite his prior plea, when Tainan appeared for sentencing on March 14, 1994, he professed his innocence. N.T.

3/14/94 at 16–17. The following exchange then occurred:

THE COURT: If you deny raping her, I'll permit you to withdraw your plea and I'll give you a jury trial and let the jury decide.

THE DEFENDANT: Your Honor, I would have preferred to have it heard by a judge because of this reason: A jury would be sensitive. Part of the strong defense would show they had prior knowledge. She had prior knowledge—

THE COURT: I am not going to and I am unable to sit here and sentence a person who asserts his innocence. If that is what you are doing at this time I'll give you a trial. I'll permit you to withdraw your plea of no contest and I'll give you any type of trial you choose. You could have a bench trial or jury trial.

THE DEFENDANT: You will sit and hear this case, Your Honor? I'll accept it.

N.T. 3/14/94 at 17. Tainan was brought before the court for trial on May 10, 1994, but he initially refused to indicate whether he wanted a jury trial or a bench trial. N.T. 5/10/94 at 10. Tainan eventually chose a jury trial, but after the jury was seated, he changed his mind and requested a bench trial. N.T. 5/10/94 at 14, 17. At that point, Judge Jackson stated that "[t]here has to be an extensive colloquy, because at the time he entered the *nolo contendre* plea I received a pre-sentence and psychiatric examination and I know his entire background. I want him colloquied as to the fact that I have that knowledge." N.T. 5/10/94 at 17–18. In response, Tainan's counsel indicated to the court that he had cautioned Tainan in this regard, and, in spite of his awareness of the judge's knowledge, Tainan informed counsel that he wanted to proceed with a bench trial. N.T. 5/10/94 at 18. Judge Jackson then instructed counsel for the Commonwealth to "[c]onduct a complete colloquy ... and be certain to examine

defendant as to my knowledge of his entire background in this case in that at the time he entered a *nolo contendre* plea I ordered a pre-sentence investigation and mental health evaluation and I have read and understand the pre-sentence report and mental health evaluation." N.T. 5/10/94 at 19–20. The colloquy was conducted, and Tainan indicated that his choice to have a bench trial before Judge Jackson was made of his own free will, and with the knowledge that Judge Jackson had thoroughly evaluated the pre-sentence report and mental health evaluation and was aware of his previous rape conviction. N.T. 5/10/94 at 20–25.

¶ 3 The bench trial was then conducted, and at the conclusion of the bench trial, Judge Jackson found Tainan guilty of four counts of rape, four counts of statutory rape, and one count each of involuntary deviate sexual intercourse, indecent assault, indecent exposure, unlawful restraint, false imprisonment, corrupting the morals of a minor, simple assault, recklessly endangering another person, and terroristic threats. Tainan was sentenced on May 17, 1994. On May 26, 1994, he appealed his sentence to this Court, but on August 30, 1995, the appeal was dismissed, without prejudice to Tainan's rights under the Post Conviction Relief Act (PCRA). On January 14, 1997, Tainan filed a PCRA petition, resulting in the *nunc pro tunc* reinstatement of his appellate rights on April 30, 1997. Tainan filed the appeal currently before us on May 22, 1997, alleging that (1) Judge Jackson should have recused himself because he was exposed to "highly prejudicial and inadmissible evidence;" and (2) Tainan's trial counsel was ineffective for failing to request that Judge Jackson recuse himself. Appellant's brief at 2.

¶ 4 Appellant's first argument is waived, as Tainan himself admits no request for recusal was ever made. Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Reil-*

*ly v. SEPTA*, 507 Pa. 204, 222, 489 A.2d 1291, 1300 (1985) ("Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result."). Apparently recognizing that this issue has been waived, Tainan also couches the allegation in terms of an ineffectiveness of counsel claim.

¶ 5 Tainan specifically asserts that his counsel was ineffective for failing to request that Judge Jackson recuse himself. Tainan claims that recusal was necessary because Judge Jackson was "consumed and tainted by [knowledge of] Appellant's two prior convictions." Appellant's brief at 14. It was this very information, however, which Tainan acknowledged his awareness of when requesting a bench trial. N.T. 5/10/94 at 18, 24–25.

¶ 6 "Counsel is presumed to be effective, and it is the defendant's burden to prove otherwise." *Commonwealth v. Cox*, 556 Pa. 366, ———————, 728 A.2d 923, 929–930 (1999) (citation omitted). In order to defeat the presumption and prove his counsel was ineffective, Tainan must show that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the action or omission in question; and (3) but for counsel's ineffectiveness, the outcome of the trial would have been different. *Commonwealth v. Dennis*, 552 Pa. 331, 339, 715 A.2d 404, 408 (1998) (*citing Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987)).

¶ 7 We initially conclude that there would have been no merit to a request for recusal. Trial counsel specifically indicated that he had discussed with Tainan Judge Jackson's knowledge of Tainan's prior convictions as the result of the judge's review of the pre-sentence report. N.T. 5/10/94 at 18. Thereafter, in Tainan's presence, Judge Jackson requested a complete colloquy, and instructed that it "examine defendant as to my knowledge of his

entire background in this case." N.T. 5/10/94 at 19. Additionally, during the colloquy, Tainan acknowledged that he was waiving a jury trial of his own free will, with the knowledge that Judge Jackson had reviewed his pre-sentence report and mental health examination. N.T. 5/10/94 at 24–25. Finally, Judge Jackson himself questioned Tainan at the end of the colloquy, and Tainan again confirmed that he knew that Judge Jackson was aware of his previous rape convictions. N.T. 5/10/94 at 25.

¶ 8 "[T]he decision of whether to waive the right to a jury trial is that of the defendant and not his attorney." *Commonwealth v. Lott*, 398 Pa.Super. 573, 582–584, 581 A.2d 612, 617–618 (1990) (citation omitted). Here, Tainan waived his right to a jury after a proper colloquy was conducted, and at no point does he challenge that colloquy. Under these circumstances, there would have been no merit to Tainan's counsel requesting that Judge Jackson recuse himself. In addition, the circumstances clearly show that counsel had a reasonable basis for not requesting recusal: his client had repeatedly indicated his desire to go forward with the bench trial, with full knowledge that Judge Jackson was aware of his prior convictions.

¶ 9 Lastly, Tainan has failed to show that but for his counsel's failure to request recusal, he would not have been convicted. "Recusal is required whenever there is substantial doubt as to a jurist's ability to preside impartially." *Commonwealth v. Fisher*, 545 Pa. 233, 244, 681 A.2d 130, 135 (1996) (citations omitted). We are guided by *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993), in which the appellant, convicted after a non-jury trial, asserted that the trial judge should have recused himself, *sua sponte.* The Pennsylvania Supreme Court found, *inter alia,* that recusal was not required, although the judge was the district attorney when the offenses were committed, took a statement from the Commonwealth's primary witness, and had previously prose-

cuted the defendant on an unrelated charge. *Edmiston*, 535 Pa. at 230, 634 A.2d at 1088. Despite these circumstances, the Court concluded that a review of the record showed that the judge harbored no bias or prejudice. *Edmiston*, 535 Pa. at 231, 634 A.2d at 1088. Similarly, in *Commonwealth v. Baker*, 531 Pa. 541, 559, 614 A.2d 663, 672 (1992), recusal of a PCRA judge was found unnecessary, even though that judge had presided over the PCRA petitioner's underlying trial.

¶ 10 To find that Tainan was prejudiced by Judge Jackson's presiding over the trial would be to conclude that Judge Jackson was biased by the information contained in Tainan's pre-sentence report and that the resulting trial was therefore poisoned. We will not make such a conclusion. To do so would require us to abandon all faith in the integrity and decorum of the trial judges of this Commonwealth. On the contrary, we presume that Judge Jackson acted properly, bound by the oaths of his office and faithful to the requirements of and unprejudiced, unbiased judiciary. *Commonwealth v. Harvey*, 514 Pa. 531, 526 A.2d 330, 333 (1987) ("[W]here a criminal case is tried before a judge sitting without a jury, there is a presumption that his knowledge, experience and training will enable him to disregard inadmissible evidence."). Further, at the conclusion of Tainan's trial, Judge Jackson specifically assured Tainan that in reaching a verdict the judge had not considered the prior convictions, or any other information that was contained in the pre-sentence reports. N.T. 5/17/94 at 114. As such, we conclude that Tainan has failed to show that Judge Jackson was "consumed and tainted by appellant's two prior convictions," or that Judge Jackson deviated in any way from that which was required of him: to provide a fair trial. As such, Tainan has failed to show prejudice.

¶ 11 Because Tainan's underlying claim has been waived, and his ineffectiveness

allegation is unproven, we affirm the judgment of sentence.

¶ 12 Affirmed.

¶ 13 BROSKY, J., files a Dissenting Opinion.

BROSKY, J., dissenting.

¶ 1 I dissent. The majority's decision, in my view, would essentially nullify long-standing authority of our Supreme Court with respect to the impartiality of a presiding judge.

¶ 2 Appellant argues that he should not have been tried before Judge Jackson due to the incriminating information which Judge Jackson had been exposed to and also that counsel was ineffective in failing to seek Judge Jackson's recusal. I must agree. It is beyond challenge that in order to provide a fair trial the fact finder cannot be exposed to inadmissible and highly prejudicial information. This is the very reason that the court is asked to rule upon evidentiary matters and suppression issues prior to the information being submitted to a jury. Although a judge sitting as fact finder is deemed more capable than a jury of rendering a fair decision if exposed to inadmissible information, *Commonwealth v. Harvey*, 514 Pa. 531, 526 A.2d 330 (1987), there are still times when a judge should not hear a non-jury trial of an accused.

¶ 3 In *Commonwealth v. Goodman*, 454 Pa. 358, 362, 311 A.2d 652, 654 (1973), our Supreme Court stated that a trial court "should honor a request for recusation where prejudicial information is received in a pre-trial proceeding that would be otherwise inadmissible during the trial of the cause."

¶ 4 In *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978), overruled on other grounds, *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), our Supreme Court concluded that an appellant's

counsel was ineffective in failing to seek recusation of a judge who heard appellant's case non-jury after first receiving the appellant's guilty plea prior to a withdrawal. In so doing the Court implicitly acknowledged that a judge would be required to honor a request for recusal where he/she had heard the defendant first tender a guilty plea then elect to receive a trial. *In accord, Commonwealth v. Walls*, 261 Pa.Super. 321, 396 A.2d 419 (1978) n. 2, and *Commonwealth v. Simmons*, 335 Pa.Super. 57, 483 A.2d 953 (1984), discussed *infra*.

¶ 5 I have little difficulty in concluding that the fact that appellant was tried for rape before a fact finder who not only had received an initial plea of *nolo contendere* but also who had been made aware that appellant had two prior convictions for sexual assaults raises a warning flag. Indeed, it is obvious that the irregularity or potential prejudice of proceeding to a bench trial before Judge Jackson was recognized by Judge Jackson as he felt compelled to ensure an "extensive colloquy" of appellant prior to proceeding to a bench trial. This situation begs the question, given the inherent prejudice of the knowledge possessed by Judge Jackson why did appellant ultimately proceed to a bench trial before Judge Jackson? Just as importantly, given the inherent prejudice of the circumstances why did Judge Jackson allow the appellant to proceed before him in a non-jury trial?

¶ 6 I am not convinced that, as insinuated by the Commonwealth, appellant persistently and specifically expressed a desire to be tried before Judge Jackson as opposed to another judge. At the initial plea proceeding when Judge Jackson indicated an unwillingness to accept the *nolo contendere* plea due to appellant's assertions of innocence he stated "I'll give you a jury trial and let the jury decide." However, appellant stated a preference for a non-jury trial[1] to which Judge Jackson

---

1. Appellant began to express a concern regarding a jury hearing the case but was interrupted by Judge Jackson. Thus, we are not aware of why appellant did not wish to pro-

then indicated that he could withdraw his plea and get either a jury or non-jury trial. Appellant then responded "you will sit and hear this case, Your Honor? I'll accept it."

¶ 7 Although appellant expressed a willingness at that time to allow Judge Jackson to hear the case he was hardly adamant or persistent about having Judge Jackson hear the case, nor was the issue of Judge Jackson's exposure to incriminating facts probed in any detail at that time. Further, although appellant did appear to have a strong preference for a non-jury trial at that time nobody suggested that he could have a non-jury trial before another judge. The case was then listed for trial two months later.[2]

¶ 8 When appellant's scheduled trial date came appellant was put through an extensive colloquy regarding his desire to have a non-jury trial. However, at that time appellant was clearly given two choices, a jury trial or a non-jury trial before Judge Jackson.[3] Appellant was not given an option of a non-jury trial before a judge unfamiliar with the case and appellant's background. Just as important, appellant twice indicated that he was proceeding non-jury because his attorney "advised me to do so." Thus, although upon its face it might seem that appellant knowingly and voluntarily elected to proceed before Judge Jackson, when the confusion and intimidation that is inherent in criminal proceedings is considered along with appellant's statements that he was advised by his attorney to

waive a jury trial, appellant's election does not have a truly knowing and voluntary sense to it.

¶ 9 Given the choice put to appellant and his responses during the colloquy I cannot agree with the Commonwealth that appellant expressed a firm desire to proceed before Judge Jackson despite the inherent risk of doing so. Nor was it clear that appellant was acting upon his own desires; rather he indicated that he was going along with counsel's advice. Most importantly, it is difficult to conceive of any rational reason why appellant would have chosen to take a trial before Judge Jackson if given a choice to proceed before another judge or why counsel would have so advised him.

¶ 10 The Commonwealth argues that appellant cannot now escape the consequences of being "tried by the very factfinder [sic] that he personally and specifically chose to hear his case,"[4] as if to create an impression that appellant personally chose Judge Jackson to hear his case from a large pool of prospective jurists. Highlighting the Commonwealth's argument is the following statement, which was bolded for emphasis, "even though defense counsel had specifically cautioned defendant that Judge Jackson was aware of his background, defendant still elected to proceed by means of a bench trial." Commonwealth's Brief, p. 13.

¶ 11 This segment highlights the essence of the case, given that Judge Jackson had been exposed to such prejudicial informa-

---

ceed before a jury. However, it was clear that appellant had concerns regarding a jury determining his guilt or innocence.

2. The Commonwealth has not suggested that it would have been difficult or impossible to reassign the case to another judge at that time or that doing so would have involved an inordinate delay.

3. Among other things Judge Jackson stated: "We are going to proceed, Mr. Tinan, (sic) we are going to proceed. The only question is how are we going to proceed." ... "You can't get around it. It is going today. Your

case is going to be disposed of today." N.T. 5/10/94 p. 12. "I am getting the distinct impression that you are seeking to toy with these proceedings and that you are seeking to disrespect the court by trying to avoid going to trial. Now, you are going to trial one way or another. We are not going to waste anymore time or money on you. You are going to trial in the next two minutes. Do you understand that? ... Now, we have a jury panel of forty. If you want to be tried by jury, we'll give you a jury trial." *Id.*, p. 18–19.

4. Commonwealth's Letter Brief, p. 12.

tion appellant never should have been placed in the situation of having to choose between a jury trial, which he had already clearly indicated he did not want, or a trial before Judge Jackson. Judge Jackson should have recused himself voluntarily after the *nolo contendere* plea was withdrawn and appellant indicated a desire to proceed non-jury or counsel should have requested that Judge Jackson recuse himself, a request which Judge Jackson should have then granted in light of the above recited caselaw. Such an action would have prevented the choice extended to appellant as well as the potential need to continue the case again for reassignment before another judge. Had appellant been offered an opportunity to proceed to a non-jury trial before another jurist and then declined the Commonwealth would have a compelling argument. However, under the facts presented it is difficult to conclude that appellant preferred a trial before Judge Jackson as opposed to before another judge.

¶ 12 I find the present case very similar to *Commonwealth v. Simmons*, 335 Pa.Super. 57, 483 A.2d 953 (1984). In *Simmons* the appellant was essentially presented with a choice of a jury trial or a trial before the judge who had heard the appellant first tender a guilty plea and then withdraw it. Additionally, the court in *Simmons* knew that the appellant had a prior criminal history. Responding to the Commonwealth's argument that the appellant had waived a challenge to the court's failure to recuse itself we stated that we could not find on the record that appellant had waived his right to be tried before another impartial judge. Instead we concluded that appellant had been presented with an improperly restricted choice, a jury trial or a trial before the court conducting the colloquy.

¶ 13 I agree with the Commonwealth and the majority that appellant "waived"

the argument that Judge Jackson should have recused himself inasmuch as Judge Jackson was never asked to recuse himself and since that matter was never raised below. Nevertheless, it is incumbent upon the court to avoid the appearance of impropriety. *See, Goodman, supra.* Given the factual background presented adherence to this principle should have resulted in the court's recusal of itself *sua sponte.* The above aside, I must conclude that appellant has raised a meritorious issue of ineffective assistance of counsel.

¶ 14 In order to prevail upon a claim of ineffectiveness an appellant must establish that the underlying allegation of ineffectiveness has arguable merit, counsel's actions or non-actions did not have a reasonable basis designed to effectuate his client's interests and that counsel's actions prejudiced appellant. *Commonwealth v. Gaskins*, 692 A.2d 224 (Pa.Super.1997).

¶ 15 As indicated above, the issue underlying the claim of counsel's ineffectiveness is meritorious. Judge Jackson was exposed to information that was extremely prejudicial to appellant. Consequently, there was a legitimate basis for seeking Judge Jackson's recusal. In like fashion I have little difficulty concluding that appellant was severely prejudiced by proceeding before Judge Jackson.

¶ 16 It appears beyond dispute that had the information been presented to a jury we would conclude that there was reversible error. The knowledge of appellant's tendering a *nolo contendere* plea and of his prior convictions was extremely prejudicial to appellant and the Commonwealth has not asserted that there was any basis for admitting it. To even the most impartial fact finder the above facts would suggest that appellant was guilty of the offenses charged, and even if consciously disregarded a danger would be presented that these facts would operate to influence on a subconscious level.[5] As such, appellant's

---

5. While addressing a similar scenario in *Simmons* this court stated "there was no question that appellant had admitted his guilt to the

trial judge. Thus the judge knew things he could not possibly put out of his mind. In these circumstances the judge's partiality

chance of prevailing in a matter where credibility determinations were vital[6] was severely handicapped. Appellant's situation was akin to a batter stepping into the batter's box against Nolan Ryan in his prime with two strikes already against him.

¶ 17 Lastly, I would conclude, as did our Supreme Court in *Badger*, that there is no apparent reasonable basis for counsel to choose not to seek Judge Jackson's recusal and reassignment of the case to another judge. It could certainly be argued that a choice to proceed to a non-jury trial as opposed to a jury trial is a matter of trial strategy. With this decision we would not take issue. However, once the decision was made to proceed non-jury we can conceive of no reasonable basis to choose to proceed before Judge Jackson, under the circumstances presented here, as opposed to another judge who would be unfamiliar with appellant's prior convictions for rape and his prior tender of a *nolo contendere* plea. Consequently, I would conclude that there existed no reasonable basis for counsel's failure to seek Judge Jackson's recusal.

¶ 18 The Commonwealth contends, and there is caselaw to support the proposition, that there exists no firm right to a non-jury trial. *Commonwealth v. Miller*, 541 Pa. 531, 552–53, 664 A.2d 1310, 1320–21 (1995). This may be true. However, adherence to the above-cited caselaw would have required Judge Jackson to recuse himself if requested. After the case had been reassigned presumably appellant would have been presented with a choice of a non-jury trial or a bench trial. At that juncture appellant's choice would have

been free from the taint that currently exists. Either way, I must agree that counsel should have requested a recusal after appellant chose to withdraw his plea of nolo contendere. Consequently, I dissent. I would conclude that appellant is entitled to a new trial.

---

could reasonably be questioned." 483 A.2d at 956.

In the present case not only did appellant tender a *nolo contendere* plea which is essentially tantamount to an admission of guilt but the trial court further learned of appellant's highly prejudicial past criminal history.

6. The case against appellant turned upon the testimony of the victim and some corroborating testimony of other witnesses. There were no eyewitnesses to an assault nor any forensic evidence which established that appellant assaulted the victim. The victim did become pregnant and contracted gonorrhea, thus, establishing that she had had sexual relations with a man. However, appellant tested negative for gonorrhea when tested pursuant to routine tests upon his arrest and imprisonment.