J-S70006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MALIK J. JOHNSON | |
| Appellant | No. 2737 EDA 2013 |

Appeal from the Judgment of Sentence May 17, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005386-2009

BEFORE: LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED DECEMBER 29, 2014**

Malik J. Johnson appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after being found guilty in a non-jury trial of third-degree murder,[1] conspiracy to commit aggravated assault,[2] and possession of an instrument of crime (PIC).[3] Johnson was sentenced to 20-40 years in prison, with a consecutive 5-10 year sentence for his conspiracy conviction.[4] We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. § 907.

[4] No further penalty was imposed for the PIC conviction.

Johnson, in collusion with his co-defendant John Cornish,[5] was involved in the shooting death of fifty-seven-year-old Stephen Tucker while Tucker was driving his gold Mercury Grand Marquis near 29th and Thompson Streets in the City of Philadelphia on October 5, 2008. Police uncovered several used cartridge casings at the scene of the crime, which were later identified by a ballistics expert as having come from two different weapons, a .9mm or .38mm handgun and a shotgun. No firearms were recovered from the scene.

The trial court summarized the evidence as follows:

Police Officer James Miller testified that shortly before 11 p.m. on October 5, 2008, he was called to the area of 2900 Thompson Street in Philadelphia. He saw a gold Mercury Grand Marquis. The driver's window appeared to be shot out. A black male, later identified as the decedent, Stephen Tucker[,] was slumped over and unresponsive. He appeared to have been shot on the left side. The officer took the victim to Hahnemann Hospital where he was pronounced dead. N.T. 1/20/12, 20-24.

The Medical Examiner, Dr. Sam Guilino[,] testified that the victim died of a gunshot wound to his chest. The bullet entered the left side of his chest, and went through the left lung, the left subclavian artery and vein. The bullet then penetrated into the neck, going through the trachea, the carotid artery and the jugular vein. The bullet lodged in the right side of the neck and was recovered. N.T. 1/31/12, [at] 11-14.

Hakeen Savage testified that he was inside "Ms[.] P's" house near the shooting scene when he heard gunshots. He further testified that after the gunfire stopped [Cornish and Johnson] came running into the house. One had a shotgun and one had a

_____

[5] Cornish has also appealed from his judgment of sentence at No. 1862 EDA 2013.

- 2 -

handgun. The witness testified that he could not remember which defendant had which weapon. He further testified that when they came in, one of the defendants said, "Don't go outside. Somebody just got shot." However, in a signed statement given to the police approximately three (3) months after the shooting . . . the witness gave a different version of events. In that statement, the witness said that right after the shooting both defendants came running into the house breathing heavily. [Johnson] was the one armed with the shotgun. [Cornish] said, "Don't go outside. We just rocked someone." The witness understood the word "rocked" to mean killed. [*Id.* at] 98-109.

Kareem Savage was called and questioned about a statement that [Cornish] made to him after the shooting admitting to being one of the shooters. The witness denied that [Cornish] made any statement to him. The witness did acknowledge that he gave a signed statement to the police detailing the substance of that conversation. However the witness testified that he lied in his statement. In that statement [S]avage detailed a conversation he had with [Cornish] after the shooting. [Cornish] admitted to doing the killing with another person. [Cornish] stated that the motive appeared to be one of mistaken identity, as the decedent was driving a care [sic] that the intended target, a person named "Mansy" was known to drive. N.T. 2/1/12, [at] 6-14 [] (testimony of Kareem Savage): N.T. 2/13/12, [at] 52-58 (testimony of Timothy Scally)[.]

Darnell Corbitt testified that he was in the car with the decedent at the time of the shooting. At trial the witness testified that after stopping at a bar at 29th and Girard, he heard gunshots from more than one gun and jumped out of the car. At trial he denied having any more information about the shooting or the shooters. However, in a signed statement given to Homicide Detective John McNamee approximately three weeks after the shooting, the witness also gave a different version of events. In that statement the witness identified photographs of both defendants as the shooters. N.T. 1/31/12, [at] 40-66 (testimony of Darnell Corbitt); N.T. 2/1/12, [at] 25-36 (testimony of Detective John McNamee).

Dandrea Brown testified before this Court on November 4, 2010. Her testimony was preserved prior to trial, as she was suffering from ovarian cancer. She lived in the house at 2907 West Flora Street, which was used for the packaging of drugs by

[defendant], his co-defendant, the Savage brothers and others. She was upstairs at the time of the shooting. She came downstairs. A few seconds after the shooting [defendant] and his co-defendant came running inside. [Codefendant] was holding a shotgun and [defendant] had a handgun. [Codefendant] told her to clean the guns and store them. She complied. N.T. 11/04[/]10, [at] 4-69.

Bullet holes were observed in the driver[']s side car door. Forensic evidence recovered from the crime scene outside the car included six (6) fired cartridge casings, three (3) bullet specimens and one (1) buckshot from a .12 gauge shotgun. No fingerprints were recovered from the crime scene, nor was a gun recovered. N.T. 1/30/12, 29-48. (Testimony of Officer Fitler.) One additional projectile and additional bullet fragments were recovered from inside the car door. N.T. 1/31/12, [at] 20-35. (Testimony of Officer Flade.)

Police Officer Stephen Ahmie, a ballistics expert [,] examined all of the ballistics evidence. The ballistic evidence recovered from the car door consisted of two (2) types, .00 buckshot consistent with coming from a shotgun shell and a bullet consistent with being from a .38 [caliber or 9-]millimeter [weapon]. The bullet recovered from the victims neck also was consistent with a .38 [caliber or 9-]millimeter [weapon]. The other ballistic evidence recovered at the crime scene consisted of seven (7) fired cartridge casings and one (11) fired shotgun shell. The fired cartridge casings all were [9-]millimeter and all were fired from the same gun. The fired shotgun shell was [a] .12 gauge and was consistent with ... the buckshot recovered. N.T. 2/1/12, [at] 62-77.

Trial Court Opinion, 4/23/14, at 2-5 (footnotes omitted).

Before trial, the court held a preservation of testimony hearing where Dandrea Brown testified and was subject to cross-examination by both

defense counsel.[6]  Ms. Brown testified that six weeks prior to the murder, she agreed that in exchange for $500, she would let Johnson and Cornish and the Savage brothers use her home for their crack cocaine operations. After she and the Co-Defendants were arrested for drug-dealing in January 2009, she gave police a statement about the murder.[7]  She also identified both Co-Defendants and described the guns they ran into the house with immediately following the shooting, which they asked her to clean and store.

Johnson and Cornish were tried together and, after a four-day bench trial, the court found them guilty of the aforementioned crimes.  Johnson was sentenced to 20-40 years for murder and a consecutive sentence of 5-10 years for conspiracy.  He filed timely post-sentence motions that were denied.  Johnson now appeals, raising the following issues for our consideration:

> (1)  Is the appellant entitled to an arrest of judgment with respect to his convictions for murder of the third degree, criminal conspiracy (aggravated assault) and possessing an instrument of crime since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving the appellant's guilt beyond a reasonable doubt?

---

[6] Because Ms. Brown had ovarian cancer, which had possibly spread to her lungs and shoulder area, her testimony was videotaped to preserve it in anticipation of a future trial.

[7] Ms. Brown was granted immunity from prosecution after signing a plea agreement.

(2)    Is the appellant entitled to a new trial as a result of the trial court's ruling during the preservation of testimony hearing that allowed the Commonwealth to introduce a letter received by the Commonwealth witness Dandrea Brown that contained threatening language?

(3)    Is the appellant entitled to a new trial as a result of the trial court's ruling during the preservation of testimony hearing that allowed the Commonwealth to introduce a letter written by Commonwealth witness Dandrea Brown that indicated that if she were killed or shot, the appellant was responsible and that the defendant had threatened her?

(4)    Is the appellant entitled to a new trial as a result of the trial court's ruling during the preservation of testimony hearing that allowed the Commonwealth to introduce testimony concerning the medical condition of Commonwealth witness Dandrea Brown?

(5)    Is the appellant entitled to a new trial as a result of the trial court's ruling during the preservation of testimony hearing that limited the cross-examination of Commonwealth witness Dandrea Brown concerning the violation of her plea agreement?

(6)    Is the appellant entitled to a new trial as a result of the trial court's ruling during the preservation of testimony hearing that limited the cross-examination of Commonwealth witness Dandrea Brown concerning the passing of drug tests as provided by the terms of her plea agreement and/or probation?

(7)    Is the appellant entitled to a remand for resentencing since the sentence imposed by the trial court is unreasonable, excessive and not reflective of the appellant's character, history and condition?

Johnson's first claim concerns the sufficiency of the evidence to support his convictions.    Specifically, Johnson contends that the Commonwealth failed to establish his identity as a shooter, as a participant

in the events resulting in the victim's death, or that he was an accomplice in possession of a weapon.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. **Commonwealth v. Randall**, 758 A.2d 669, 674 (Pa. Super. 2000).

Although Johnson characterizes the Commonwealth's evidence as "speculative, conjectural, inherently inconsistent, contradictory and unreliable," Appellant's Brief, at 23, we find otherwise. Instantly, an eyewitness observed Johnson fire a shotgun at the victim. At trial, several Commonwealth witnesses corroborated that Johnson was one of two gunmen involved in the victim's fatal shooting. Immediately following the shooting, Johnson and his co-defendant burst into a house warning the occupants, "Don't go outside, [w]e just rocked [another word for shot] someone." Finally, a ballistics analysis confirmed that a shotgun, like the one the eyewitness saw Johnson fire at the victim, was used to fatally shoot Tucker. This evidence sufficiently proves Johnson's identity as well as his possession of a weapon involved in the commission of the victim's death which support his convictions for third-degree murder, criminal conspiracy (aggravated assault) and PIC.

Johnson's next five issues raised on appeal concern the trial court's admission of evidence offered by Commonwealth witness, Dandrea Brown, as well as the court's limitation of defense counsel's cross-examination of Ms. Brown at the preservation of testimony hearing.

First, Johnson claims that the trial court improperly permitted the Commonwealth to introduce a letter that Ms. Brown received in which Johnson allegedly used threatening language indicating that if she were killed or shot, Johnson was responsible.

Admissibility of evidence is a matter addressed to the sound discretion of the trial court. *Commonwealth v. Gordon*, 673 A.2d 866 (Pa. 1996). As with any evidentiary ruling, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice. *Id.* "We may reverse rulings on the admissibility of evidence only if it is shown that the trial court abused its discretion." *Commonwealth v. Lockuff*, 813 A.2d 857, 860 (Pa. Super. 2002).

Due to Ms. Brown's serious health issues, the court held a preservation of testimony hearing in the event that she did not survive until the time of trial. The court made clear at the hearing that if the allegations of threats made to Ms. Brown by Johnson in an alleged letter were not substantiated, those portions would be edited out of the hearing tapes. However, because Ms. Brown was available to testify at trial, the portions of her testimony complained of by Johnson were not considered by the trial judge at Johnson's bench trial. Therefore, no prejudice resulted by not editing the

tape from the preservation hearing. ***See Commonwealth v. Tainan***, 734 A.2d 886 (Pa. Super. 1999) (where criminal case is tried before judge sitting without jury, there is presumption that judge's knowledge, experience, and training will enable judge to disregard inadmissible evidence). He is entitled to no relief on this claim.

Johnson also claims that the trial court improperly permitted Ms. Brown to testify about irrelevant evidence regarding her medical condition which prejudiced him by placing her in a sympathetic light. Again, because this testimony was never considered by the trial judge at Johnson's bench trial, there was no abuse of discretion.

Johnson next asserts that he is entitled to a new trial because the trial court improperly limited cross-examination of Ms. Brown, during the preservation of testimony hearing, concerning the violation of her plea agreement and her ability to pass a drug test "on the spot."

The scope and manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion. ***Commonwealth v. Nunn***, 947 A.2d 756 (Pa. Super. 2008). Further, we have generally defined the scope of cross-examination to include "inferences, deductions, or conclusions which may be drawn therefrom, which explain or destroy the effect of direct testimony." ***Id.*** at 762. Finally, a trial court may limit the scope of cross-examination to prevent repetitive inquiries and cumulative testimony. ***Commonwealth v. Conde***, 822 A.2d 45 (Pa. Super. 2003).

Instantly, the trial judge permitted defense counsel to cross-examine Ms. Brown on her possession and use of crack cocaine after she entered into her plea bargain.  N.T. Preservation Hearing, 11/4/10, at 157-60.  The court, however, sustained an objection to counsel's questioning of the witness regarding the legal implications (violation of plea agreement) of her using illegal drugs in conjunction with having signed a plea bargain indicating she "shall commit no crimes in the future."  *Id.* at 159.  The court also limited counsel's cross-examination of Ms. Brown concerning whether she could pass a drug test if she were to take it on the spot (at the time of the preservation hearing).  We find no error or abuse of discretion in the court's rulings where:  (1) it determined that legal matters regarding the implications of her plea agreement were matters for the court, and not the witness, to decide; and (2) where the court was merely imposing a reasonable limitation on counsel's extensive questioning regarding Ms. Brown's ability to pass a drug test after having already questioned her about her prior use of crack cocaine and her having been drug-free for three months. *Conde*, *supra*.

In his final claim on appeal, Johnson raises a discretionary aspect of sentence claim, contending that he is entitled to a remand for resentencing because the trial court's sentence is unreasonable, excessive and not reflective of his character, history and condition.  Specifically, he asserts that there is no evidence in the record with regard to his background to warrant

the court's sentence and that the sentence was impermissibly based solely on the nature and circumstances of the crimes.

> A four-pronged analysis is required before the Pennsylvania Superior Court will review the merits of a challenge to the discretionary aspects of a sentence. Those prongs are: (1) whether the appellant has filed a timely notice of appeal, Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

*See Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa. Super. 2005). Johnson has complied with the four prongs outlined in *Hyland*, including raising a substantial question to invoke our appellate review. *See Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. 2011).

Instantly, Jackson was sentenced to an aggregate term of incarceration of 25-50 years' imprisonment for third-degree murder and criminal conspiracy. Jackson's prior record score (PRS) was a zero and the offense gravity score (OGS) for both offenses was a 14. A standard-range sentence for each offense (with a PRS of 0 and an OGS of 14) is 72 months-statutory limit (SL).[8] Here, the statutory maximum sentence for third-

---

[8] Because Johnson committed the instant offenses on October 1, 2008, the 6th edition of the Sentencing Guidelines apply to his sentence. *See* Pennsylvania Sentencing Guidelines Implementation Manual, 6th ed., 6/3/2005 (applicable to date of offense(s) committed on or after June 3, 2005 and up until December 5, 2008). Both Johnson and the Commonwealth incorrectly state that the sentencing guidelines call for a range of 84-SL for a prior record score of 0 and offense gravity score of 14. *(Footnote Continued Next Page)*

degree murder and conspiracy is 40 years' imprisonment. *See* 18 Pa.C.S. § 1102(d). Therefore, Johnson's sentence on each count was within the standard-range of the guidelines.[9]

"In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *See* 42 Pa.C.S. § 9721(b). Moreover, our Supreme Court has held that where the trial court possesses a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. ***Commonwealth v. Devers***, 546 A.2d 12 (Pa. 1988).

The trial judge, on the record, provided the following reasons for sentencing the Defendants:

> The Court having considered the arguments of counsel, all of the evidence in this case and the Court notes that Defendant was found guilty of murder in the third degree when this was a very close case, could have been murder in the first degree which you

*(Footnote Continued)* ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Appellant's Brief, at 51; Commonwealth's Brief, at 24. Rather, the range is 72-SL. *Id.* at § 303.16.

[9] Johnson's characterization of his murder sentence as one that "is the maximum sentence imposable" is simply incorrect. Under the guidelines, all sentence recommendations suggest months of minimum confinement pursuant to 42 Pa.C.S. §§ 9755(b) (partial confinement) and 9756(b) (total confinement).

would have been looking at a life sentence, the Court also takes into consideration the presentence, the psych, the testimony of his family, as well as the letter, as well as the impact on the victim's family.

N.T. Sentencing Hearing, 5/17/13, at 26-27. With regard to Johnson, the

court stated:

Mr. Johnson, obviously all of the things that I said to Mr. Cornish concerning the impact on the victim's families and the impact on your family are the exact same.

At 15 years-old[10] you made a decision which took a man's life and that ripple affect [sic] will continue for a very, very long time.

The Court, therefor[e], taking into consideration the nature of the case, the information that is before me, the testimony from your family, as well as your own testimony and the presentence and psych reports, I sentence you as follows. . .[.]

*Id.* at 30-31.

Here, the court imposed a sentence for each crime, which under the

facts of the case, was reasonable and considerate of the requisite factors

outlined in the Sentencing Code. *See* 42 Pa.C.S. § 9721(b) (court shall

follow general principle that sentence imposed should call for confinement

that is consistent with protection of public, gravity of offense as it relates to

impact on life of victim and on community, and rehabilitative needs of

defendant; court shall also consider applicable sentencing guidelines). The

court even indicated that it could have easily rendered a first-degree murder

_____

[10] We note that Johnson raises no claims on appeal with regard to the fact that he was a minor when he committed the instant crimes, yet was tried as an adult.

verdict based on the evidence, which would have resulted in a life sentence. Based upon the record, we can discern no abuse of the trial court's discretion in sentencing Johnson to an aggregate term of 25-50 years in prison. **Commonwealth v. Walls**, 926 A.2d 957 (Pa. 2007).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2014